## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**CARLA ORTIZ**, Individually, and on behalf of
her daughter, **J.L.,** a minor,
128 Elm Avenue
Chesilhurst, NJ 08089

       Plaintiffs,

*v.*

**BEN STRONG TRUCKING, INC.**
2300 W. Meadowview Road
Suite 124
Greensboro, NC 27407

      Serve Stephen S. McCloskey
      Semmes, Bowen & Semmes
      25 S. Charles Street
      Suite 1400
      Baltimore, MD 21201

**~and~**

**ALLIANCE TRUCKING AND
LOGISTICS, LLC**
385 Sawgrass VW
Fairburn, GA 30213

      Serve: Winston Cook
      10175 Hemlock Way
      Jonesboro, GA 30238

**~and~**

**JOHN OLIVER TERRY, JR.**
233 High Street
Henderson, NC 27536

      Serve Stephen S. McCloskey
      Semmes, Bowen & Semmes
      25 S. Charles Street
      Suite 1400
      Baltimore, MD 21201

**~and~**

Case No.

**BOWMAN SALES AND EQUPMENT, INC.,**
10233 Governor Lane Blvd
Williamsport, MD 21795

      Serve: Todd A. Bowman
      10233 Governor Lane Blvd
      Williamsport, MD 21795

**~and~**

**COWAN SYSTEMS, INC.**
4555 Hollins Ferry Road
Baltimore, MD 21227

      Serve: Herman E. Funk, JR.
      4555 Hollins Ferry Road
      Baltimore, MD 21227

**~and~**

**COWAN SYSTEMS, LLC**
4555 Hollins Ferry Road
Baltimore, M.D. 21227

      Serve: Herman E. Funk, JR.
      4555 Hollins Ferry Road
      Baltimore, MD 21227

**~and~**

**COWAN SYSTEMS TRANSPORTATION, LLC**
4555 Hollins Ferry Road
Baltimore, MD 21227

      Serve: Herman E. Funk, JR.
      4555 Hollins Ferry Road
      Baltimore, MD 21227

      Defendants.

## <u>COMPLAINT</u>

    ***COME NOW*** Plaintiffs, by and through undersigned counsel, and respectfully make this

Complaint against Ben Strong Trucking, LLC; John Oliver Terry, Jr.; Alliance Trucking and

Logistics, LLC; Bowman Sales and Equipment, Inc.; Cowan Systems, Inc.; Cowan Systems, LLC; and Cowan Systems Transportation, LLC, and for their claim state:

## JURISDICTION

1.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that Plaintiffs are citizens of the State of New Jersey, and Defendants are incorporated in and/or citizens of the States of North Carolina, Georgia, and Maryland, and the amount in controversy exceeds the jurisdictional amount of $75,000.00.

2.   This Court has personal jurisdiction over Defendants pursuant to Md. Code, Courts and Judicial Proceedings § 6-103, and because Defendants have the requisite minimum contacts with the State of Maryland.

3.   Venue lies in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1402 since the occurrence which gave rise to the cause of action arose in the State of Maryland.

## PARTIES

4.   Carla Ortiz is and, at all times relevant to this action, was a citizen of the State of New Jersey.

5.   J.L. is and, at all times relevant to this action, was a citizen of the State of New Jersey.

6.   J.L. is a minor.

7.   Ms. Ortiz is the biological mother of J.L. and has full legal custody over J.L.

8.   Defendant Ben Strong Trucking, Inc. (hereinafter "BEN STRONG") is a corporation organized and existing under the laws of the State of North Carolina with its principle place of business in North Carolina, and engages in interstate and intrastate for-hire commercial, common, and/or contract carrier operations. At all times relevant hereto, Defendant BEN STRONG regularly conducted and transacted business in the United States and the State of Maryland.

9. Defendant BEN STRONG is registered with the United States Department of Transportation under DOT No. 3020715 and MC No. 034201.

10. Defendant BEN STRONG is registered with the United States Department of Transportation as a "Motor Property Common Carrier."

11. Defendant Alliance Trucking and Logistics, LLC (hereinafter "ALLIANCE") is a corporation organized and existing under the laws of the State of Georgia with its principle place of business in Georgia. Alliance engages in interstate and intrastate for-hire commercial, common, and/or contract carrier operations. At all times relevant hereto, Defendant ALLIANCE regularly conducted and transacted business in the United States and the State of Maryland.

12. Defendant ALLIANCE is registered with the United States Department of Transportation under DOT No. 3031381 and MC No. 039578.

13. Defendant ALLIANCE is registered with the United States Department of Transportation as a "Motor Property Common Carrier."

14. Upon information and belief, Defendant Terry resides in the State of North Carolina.

15. Defendant Terry held a CDL A Active license at the time of the incident in question from the State of North Carolina.

16. Defendant Cowan Systems, Inc. (hereinafter "CSI") is a corporation organized and existing under the laws of the State of Maryland with its principle place of business in Maryland, and engages in interstate and intrastate for-hire commercial, common, and/or contract carrier operations. At all times relevant hereto, Defendant CSI regularly conducted and transacted business in the United States and the State of Maryland.

17. Defendant CSI is not registered with the United States Department of Transportation.

18. Defendant Cowan Systems, LLC. (hereinafter "CSL") is a corporation organized and existing under the laws of the State of Maryland with its principle place of business in Maryland, and

engages in interstate and intrastate for-hire commercial, common, and/or contract carrier operations. At all times relevant hereto, Defendant CSL regularly conducted and transacted business in the United States and the State of Maryland.

19. Defendant CSL is registered with the United States Department of Transportation under DOT No. 548880 and MC No. 271882.

20. Defendant CLS is registered as a "Motor Property Contract Carrier," "Property Broker," and a "Motor Property Common Carrier."

21. Defendant Cowan Systems Transportation, LLC (hereinafter "CST") is a corporation organized and existing under the laws of the State of Maryland with its principle place of business in Maryland, and engages in interstate and intrastate for-hire commercial, common, and/or contract carrier operations. At all times relevant hereto, Defendant CST regularly conducted and transacted business in the United States and the State of Maryland.

22. Defendant CST is registered with the United States Department of Transportation under DOT No. 2235345 and MC No. 542448.

23. Defendant CST is registered with the United States Department of Transportation as a "Property Broker."

24. Upon information and belief, ALLIANCE owned several commercial vehicles that it leased to BEN STRONG.

25. Defendant Terry is and was an agent, servant, and/or employee of BEN STRONG at all times relevant to this action and acting within the scope of his employment.

26. Defendant Terry was a statutory employee of Defendants CSI, CSL, and/or CST at all times relevant to the incident in question and acting within the scope of his employment.

27. Defendant BEN STRONG was a statutory employee of Defendants CSI, CSL, and/or CST at all times relevant to the incident in question and acting within the scope of its employment.

28. Each Defendant was the agent, servant, employer, employee, partner, and/or joint venturer of each and every other Defendant and at all relevant times was acting in the course and scope and in furtherance of such relationship, or other capacity, so as to give rise to vicarious liability, each liable for the acts or omissions of the other. Further, each authorized, ratified, and adopted the acts of the other.

29. The "Federal Motor Carrier Safety Regulations" or "FMCSR" and the "Moving Ahead for Progress in the 21st Century Act" or "MAP-21" are applicable to this case and all Defendants were subject to and were required to obey these regulations and laws at the time of the collision and at all relevant times prior to the collision.

30. At all times alleged herein, all Defendants, and each of them, were fully informed of the actions of their agents and employees, and thereafter no officer, director, or managing agent of Defendants repudiated those actions, which failure to repudiate constituted adoption and approval of said actions and that all defendants, and each of them, thereby ratified those actions.

## **BACKGROUND**

31. The fundamental purpose of the Federal Motor Carrier Safety Regulations ("FMCSR") is to promote safety and to prevent fatalities and injuries to the public at large.

32. 49 U.S.C. §390.1(e) requires that "[e]very employer shall be knowledgeable of and comply with all regulations contained in this subchapter which are applicable to that motor carrier's operations."

33. 49 U.S.C. §390.5 defines an "Employee" as "any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler."

34. 49 U.S.C. §390.5 defines an "Employer" as "any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it…"

35. 49 U.S.C. §13102(2) defines a "motor carrier" as "a person providing motor vehicle transportation for compensation."

36. 49 U.S.C. §13102(2) defines a "broker" as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation."

37. 49 C.F.R. §371.2(a) defines a "broker" as "a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier. Motor carriers…are not brokers within the meaning of this section when they arrange the transportation of shipments when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport."

38. 49 C.F.R. §371.7(a) states that a "broker shall not perform or offer to perform any brokerage service (including advertising), in any name other than that in which it is registration issued" and section (b) states that a "broker shall not, directly or indirectly, represent its operations to be that of a carrier."

39. 49 C.F.R. §371.2 restricts motor vehicle carriers to act as a "broker" if they have accepted and legally bound themselves to transport a shipment in stating that, "[m]otor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport."

40. In 2012, the Moving Ahead for Progress in the 21st Century Act ("MAP-21") was enacted in furtherance of the Federal Motor Carrier Safety Administration's core principles.

41. "Many of the provisions in MAP-21 track the Agency's strategic framework to improve commercial motor vehicle (CMV) safety by supporting [the FMCSA's] three core principles: 1. Raise the bar to enter the industry and operate on our roads; 2. Hold motor carrier and drivers to the highest safety standards to continue operations; and 3. Remove the highest risk drivers, vehicles, and carriers from our roads and prevent them from operating." (https://www.fmcsa.dot.gov/mission/policy/map-21-moving-ahead-progress-21st-century-act) (last visited October 3, 2018).

42. The MAP-21 legislation made clear, among other things, that in order to be a motor carrier or a broker for transportation a person/entity must be registered accordingly.

43. 49 U.S.C. §1390(c) specifically requires that "[f]or each agreement to provide transportation or service for which registration is required under this chapter, the registrant shall specify, in writing, the authority under which the person is providing such transportation or services."

44. 49 U.S.C. §1390(c) prohibits an entity from representing itself as a motor carrier in order to secure a shipment and then to broker the shipment out to a third party. Such a practice is known as "double brokering" and is illegal.

## THE SHIPMENT

45. Upon information and belief, GAF Materials ("GAF") had a contract with CSI that required CSI to act as the motor carrier for the shipment in question ("The Shipment"), and many others.

46. The Packing Slip for The Shipment in question indicates that on May 16, 2018 GAF requested that "Cowan Systems, Inc." deliver The Shipment.

47. Upon information and belief, "Cowan Systems, Inc." accepted The Shipment and did not reject it.

48. The Bill of Lading for The Shipment in question indicates that Cowan Systems, Inc. was the "Carrier" contracted to haul The Shipment.

49. Upon information and belief, neither CSI nor CSL ever rejected the offered Shipment under the contract; rather, CSI held itself out to GAF and the public as large as the motor carrier of the Shipment.

50. Upon information and belief, CSI, CSL, and/or CST contracted with BEN STRONG to deliver the Shipment under the contract.

51. Upon information and belief, CSI, CSL, and/or CST failed to conduct any reasonable inquiry into safety record and standards of BEN STRONG.

52. A reasonable inquiry, and even a bare minimalistic inquiry, into the safety record of BEN STRONG by reviewing the SAFER website would have demonstrated that BEN STRONG had an out of service vehicle rate of 40% with a national average of 20.72% and an out of service driver rate of 13.3% with a national average of 4.50%.

53. Such ratings made it clear that BEN STRONG posed an unreasonable risk to other persons who would foreseeably come into contact with BEN STRONG in the course of it hauling The Shipment.

54. Selection of BEN STRONG by CSI, CSL, and/or CST in light of BEN STRONG and its drivers' driving record to haul this load demonstrated an extreme and outrageous failure to adhere to their duties under the applicable statutes, regulations, and common law.

55. Based on these rates, it was reasonably foreseeable that BEN STRONG and its drivers would cause an incident such as the one that did occur.

56. Upon information and belief, BEN STRONG was willing to accept the shipment at a substantially reduced contract rate from CSI, CSL, and/or CST as the contract rate was between GAF and CSI.

57. Upon information and belief, CSI, CSL, and/or CST accepted the contract rate from GAF and also accepted a brokerage fee from sending the Shipment to BEN STRONG.

58. The manner in which CSI, CSL, and/or CST orchestrated the Shipment to be picked up by BEN STRONG was done intentionally and was done in the usual and customary practice of CSI, CSL, and/or CST.

59. The manner in which CSI, CSL, and/or CST orchestrated the Shipment to be picked up by BEN STRONG was done fraudulently in contravention of the applicable statues and regulations.

### THE INCIDENT

60. Plaintiff J.L. is the daughter of Plaintiff Ortiz.

61. On June 18, 2018, Plaintiff J.L. was thirteen years old.

62. Plaintiffs Ortiz and J.L. were traveling home to New Jersey from Concord, N.C. on I-95 North from a martial arts competition in which J.L. had participated.

63. Plaintiff Ortiz was driving.

64. As they were approaching mile marker 76, Plaintiff Ortiz took notice of construction signage indicating that the road was narrowing down to one lane.

65. At the time Plaintiff Ortiz took notice of the signage, she was driving her automobile in the right hand land.

66. As Plaintiff Ortiz' automobile started to approach the construction zone, traffic slowed down to a "stop and go" speed, and she began to move in pace with the traffic.

67. At that time, Defendant Terry was also traveling north on Interstate 95.

68. Defendant Terry was driving a 2011 Volvo TT bearing a VIN of 4VANC9TH4BN530842 that was owned by ALLIANCE and being leased to BEN STRONG.

69. Defendant Terry was also hauling a trailer owned by BSE attached to his cab that contained the Shipment that CSI had accepted to act as the motor carrier for from GAF.

70. Upon information and belief, Defendant Terry was not in compliance with the FMCSR at the time of the incident.

71. Upon information and belief, the trailer was carrying a load of shingles that was being sold by GAF to Harvey Building Products in Southborough, MA.

72. As Plaintiff Ortiz' automobile was in the construction zone moving in pace with the stop and go traffic, Plaintiffs suddenly felt what Ms. Ortiz has described as a "bomb going off" as Defendant Terry's tractor trailer struck the rear-end of her vehicle with such force that it encroached into Plaintiff's vehicle and caused the Plaintiff's vehicle to become attached to the front of Defendant Terry's truck.

73. Witnesses to in collision indicated that Defendant Terry's truck never slowed down and was driving at an excessive speed.

74. Upon impact, Plaintiff Ortiz lost complete control of her vehicle as Defendant Terry's truck was fully controlling the rate of speed and direction of travel of the combined truck/car.

75. The combined truck/car continued North on I-95 and struck two other cars as the truck started veering to the left and across the middle and left hand lanes of traffic before coming to a rest.

76. Plaintiffs then remained trapped inside their vehicle as they waited for emergency personnel to arrive.

77. While awaiting the emergency personnel, J.L. informed Ms. Ortiz that she felt like there was "glass all through her back." Ms. Ortiz looked at J.L.'s back and saw a large protrusion, which is now understood to have been her spinal cord.

78. Ms. Ortiz continued to talk to J.L. and encourage her to stay awake as J.L. was struggling to remain conscious and Ms. Ortiz feared that J.L. was dying.

79. Ms. Ortiz experienced extraordinary fright, fear, sadness, and anxiety as she watched her daughter struggle to survive.

80. Both Plaintiffs experienced several physical and emotional pain and suffering while trapped inside the vehicle and such damages continue to this day and will continue into the foreseeable future.

81. Eventually, emergency personnel arrived on the scene and utilized the "jaws-of-life" to cut Plaintiff's vehicle open.

82. Ms. Ortiz was the first to get out of her vehicle and stood by watching the emergency medical staff take precautions to extract J.L. from the vehicle and ultimately onto a helicopter to be transferred to Johns Hopkins University Hospital.

83. Ms. Ortiz also traveled to Johns Hopkins University Hospital.

84. As a result of the incident in question, J.L. suffered numerous injuries including a fracture and dislocation to her spinal cord that has left her paralyzed from approximately the breast plate down.

85. The injury was so severe that it was decided upon presentation at Johns Hopkins to wait and to stabilize her before conducting any surgical intervention.

86. Ultimately, J.L. underwent spinal surgery at Johns Hopkins.

87. During her admission at Johns Hopkins, J.L. frequently had nightmares of the crash and her mother yelling and screaming at her that would cause her to wake up in severe emotional distress. These traumatic experiences continue to occur and it is believed that they will continue to occur into the future.

88. J.L. was eventually discharged to the Kennedy Krieger Institute for rehabilitation. She was then discharged home to New Jersey in late August of 2018.

89. Since returning to New Jersey, J.L. has begun to undergo rehabilitative care and is under continued treatment with numerous healthcare providers, which she will have to undergo for the rest of her life.

90. J.L's paralysis is permanent.

91. As a result of this incident, J.L. has suffered additional medical injuries aside from her paralysis and continues to suffer from the sequellae of the injuries and resulting issues such as frequent urinary tract infections, ulcerations, a massive tear to her perineum, and neurological, cardiology, gastrointestinal and other system complications.

92. As a result of the incident in question, J.L. has incurred medical bills and will continue to incur medical bills into the future.

93. As a result of the incident in question, J.L. has incurred a significant and permanent injury to her future earnings capacity.

94. As a result of the incident in question, J.L. is currently being home schooled as arrangements are still being made to accommodate her. As of the filing of this Complaint, J.L. has still not returned to school.

95. As a result of the incident in question, J.L. has also incurred and will continue to incur into the future non-economic damages in the form of mental anguish, emotional pain and suffering, physical pain and suffering, loss of society, companionship, inconvenience, physical impairment, disfigurement, and comfort.

96. As a result of the incident in question, Ms. Ortiz suffered a concussion and a closed fracture of the glenoid cavity and neck of right scapula among other physical injuries.

97. Ms. Ortiz continues to seek treatment for her injuries.

98. As a result of the incident in question, Ms. Ortiz has incurred medical bills and will continue to incur medical bills into the future.

99. As a result of the incident in question, Ms. Ortiz has incurred lost wages and will continue to incur lost wages.

100.     As a result of the incident in question, Ms. Ortiz has also incurred non-economic damages in the form of mental anguish, emotional pain and suffering, physical pain and suffering, loss of society, companionship, and comfort.

101.     Furthermore, as a result of the incident in question, the Ortiz house requires home modifications to be made in order to allow J.L. to be able to utilize the entirety of the house to the best abilities as she once did including renovations to her bathroom, bedroom, hallways, entrance ways, stairwells, etc.

102.     At no point in time were either Plaintiffs Ortiz or J.L. negligent.

103.     At all points in time relevant to these causes of action Plaintiffs Ortiz and J.L. acted reasonably under the circumstances.

### Count I
### NEGLIGENCE

104.     Plaintiffs incorporate by reference all preceding paragraphs as stated herein.

105.     At all times relevant to this action, Defendant Terry, was an agent, servant, and/or employee of Defendants ALLIANCE and BEN STRONG.

106.     At all times relevant to this action, Defendant Terry was a statutory agent of Defendants CSI, CSL, and/or CST.

107.     At all times relevant to this action, Defendant Terry, and thereby Defendants BEN STRONG, ALLIANCE, BSE, CSI, CSL, CST had a duty to maintain proper control of his vehicle, to obey the traffic and motor vehicle rules and regulations that were in full force and effect at the time of the collision, and obey the state and federal regulations with regard to the safe and lawful operation of a commercial motor vehicle on public roads.

108.     Defendant Terry, and thereby Defendants BEN STRONG, ALLIANCE, BSE, CSI, CSL, CST, was negligent, careless, reckless, extreme and outrageous, wanton, and unlawfully in violation of the applicable rules and regulations in that he:

    a.    Failed to keep a proper lookout while operating the tractor-trailer;

    b.    Failed to maintain control of the tractor-trailer at all times;

    c.    Operated the tractor-trailer when he was not medically, mentally, or physically capable of doing so in a safe and legal manner;

    d.    Operated the tractor-trailer at a speed greater than would permit safe stopping within a legal and/or reasonable and proper distance under the circumstances then existing;

    e.    Failed to maintain adequate attention to traffic and road conditions, and to the path of travel of his tractor-trailer prior to, and up to, the moment of impact with Plaintiffs' vehicle;

    f.    Crashed into the vehicle operated by Plaintiff Ortiz,

    g.    Failed to abide by the applicable statues including all relevant State and Federal Statutes and regulations; and

    h.    Was otherwise negligent.

109.     Plaintiffs further assert the doctrines of *respondeat superior* and *res ipsa loquitor*.

110.     As a direct and proximate result of the negligent, careless, reckless, extreme and outrageous, and wanton conduct of Defendant Terry, and thereby Defendants BEN STRONG, ALLIANCE, BSE, CSI, CSL, CST, Defendants' tractor-trailer crashed into Plaintiff Ortiz vehicle, causing the injuries identified above.

111.     As a direct and proximate result of the aforementioned negligent, careless, reckless, extreme and outrageous, and wanton conduct of Defendant Terry, and thereby Defendants BEN STRONG, ALLIANCE, BSE, CSI, CSL, CST, Plaintiff J.L. has suffered and will continue to suffer economic damages in all manner of forms including but not limited to medical care and bills, psychiatric care and bills, lost earning capacity, out of pocket losses for medical equipment and home modifications, expenses needed for reasonable accommodations in life, and other such damages.

112.     As a direct and proximate result of the aforementioned negligent, careless, reckless, extreme and outrageous, and wanton conduct of Defendant Terry, and thereby Defendants BEN

STRONG, ALLIANCE, BSE, CSI, CSL, CST, Plaintiff J.L. has suffered and will continue to suffer non-economic damages in the form of mental anguish, emotional pain and suffering, physical pain and suffering, loss of society, companionship, inconvenience, physical impairment, disfigurement, comfort, and all other such forms as recoverable under the law.

113.    As a direct and proximate result of the aforementioned negligent, careless, reckless, extreme and outrageous, and wanton conduct of Defendant Terry, and thereby Defendants BEN STRONG, ALLIANCE, BSE, CSI, CSL, CST, Plaintiff Ortiz has suffered and will continue to suffer economic damages in all manner of forms including but not limited to medical care and bills, psychiatric care and bills, lost wages, lost earning capacity, out of pocket losses for medical equipment and home modifications, expenses needed for reasonable accommodations in life, and other such damages.

114.    As a direct and proximate result of the aforementioned negligent, careless, reckless, extreme and outrageous, and wanton conduct of Defendant Terry, and thereby Defendants BEN STRONG, ALLIANCE, BSE, CSI, CSL, CST, Plaintiff Ortiz has suffered and will continue to suffer non-economic damages in the form of mental anguish, emotional pain and suffering, physical pain and suffering, loss of society, companionship, inconvenience, physical impairment, disfigurement, comfort, and all other such forms as recoverable under the law.

115.    As a direct and proximate result of the aforementioned negligent, careless, reckless, extreme and outrageous, and wanton conduct of all Defendants, Plaintiff Ortiz is also seeking emotional damages related to the fear she felt and continues to fear for her daughter's life from the time she felt the impact of the collision, through the time her daughter complained of having glass in her back, and through the present day.

## Count II
## NEGLIGENT HIRING

116.    Plaintiffs incorporate by reference all preceding paragraphs as stated herein.

117.    At all times relevant to this action, Defendant Terry, was an agent, servant, and/or employee of Defendants ALLIANCE and BEN STRONG.

118.    At all times relevant to this action, Defendant Terry was a statutory agent of Defendants CSI, CSL, and/or CST.

119.    Defendants BEN STRONG, ALLIANCE, CSI, CSL, and CST had a duty not to employ any person who posed an unreasonable risk to other persons who would foreseeably come into contact with that employee because of the employment relationship.

120.    Defendants BEN STRONG, ALLIANCE, CSI, CSL, and CST were required to see to it under the FMCSR that Defendant Terry was adhering to such regulations.

121.    Defendants BEN STRONG, ALLIANCE, CSI, CSL, and CST, were negligent, careless, reckless, extreme and outrageous, wanton, and unlawful in hiring an employee that posed such an unreasonable risk and in failing to properly vet the driver.

122.    Defendants BEN STRONG, ALLIANCE, CSI, CSL, and CST were negligent, careless, reckless, extreme and outrageous, wanton, and unlawfully in violation of the applicable rules and regulations in that they:

    a.    Failed to adequately supervise their drivers and operators, including Defendant Terry;

    b.    Failed to adequately perform background investigations and otherwise negligently hired unqualified or unfit individuals, including Defendant Terry;

    c.    Failed to take corrective measures for improper and unsafe activities of their drivers and operators, including Defendant Terry;

    d.    Permitted their drivers and operators, including Defendant Terry, to continue driving despite repetitive safety violations and in violation of motor carrier safety regulations;

    e.    Negligently hired and entrusted the operation of their trucks to drivers and operators, including Defendant Terry, who was incompetent, unfit, and reckless, to the extent that he had prior incidents involving reckless disregard of traffic signals;

    f.    Failed to train, retrain, monitor, correct, discipline, and/or reprimand Defendant Terry;

    g.    Failed to properly research Defendant Terry and/or BEN STRONG in order to determine his/its safety record;

    h.    Failed to abide by the applicable statues including all relevant State and Federal Statutes and regulations; and

    i.    Being otherwise negligent.

123.     Plaintiffs further assert the doctrines of *respondeat superior* and *res ipsa loquitor*.

124.     As a direct and proximate result of the negligent, careless, reckless, extreme and outrageous, and wanton conduct of Defendants BEN STRONG, ALLIANCE, CSI, CSL, and CST, Defendants' tractor-trailer crashed into Plaintiff Ortiz vehicle, causing the injuries identified above.

125.     As a direct and proximate result of the aforementioned negligent, careless, reckless, extreme and outrageous, and wanton conduct of Defendants BEN STRONG, ALLIANCE, CSI, CSL, and CST, Plaintiff J.L. has suffered and will continue to suffer economic damages in all manner of forms including but not limited to medical care and bills, psychiatric care and bills, lost earning capacity, out of pocket losses for medical equipment and home modifications, expenses needed for reasonable accommodations in life, and other such damages.

126.     As a direct and proximate result of the aforementioned negligent, careless, reckless, extreme and outrageous, and wanton conduct of Defendants BEN STRONG, ALLIANCE, CSI, CSL, and CST, Plaintiff J.L. has suffered and will continue to suffer non-economic damages in the form of mental anguish, emotional pain and suffering, physical pain and suffering, loss of society, companionship, inconvenience, physical impairment, disfigurement, comfort, and all other such forms as recoverable under the law.

127.     As a direct and proximate result of the aforementioned negligent, careless, reckless, extreme and outrageous, and wanton conduct of Defendants BEN STRONG, ALLIANCE, CSI, CSL, and CST, Plaintiff Ortiz has suffered and will continue to suffer economic damages in all manner of forms including but not limited to medical care and bills, psychiatric care and bills, lost wages, lost earning capacity, out of pocket losses for medical equipment and home modifications, expenses needed for reasonable accommodations in life, and other such damages.

128.     As a direct and proximate result of the aforementioned negligent, careless, reckless, extreme and outrageous, and wanton conduct of Defendants BEN STRONG, ALLIANCE, CSI,

CSL, and CST, Plaintiff Ortiz has suffered and will continue to suffer non-economic damages in the form of mental anguish, emotional pain and suffering, physical pain and suffering, loss of society, companionship, inconvenience, physical impairment, disfigurement, comfort, and all other such forms as recoverable under the law.

129.     As a direct and proximate result of the aforementioned negligent, careless, reckless, extreme and outrageous, and wanton conduct of Defendants BEN STRONG, ALLIANCE, CSI, CSL, and CST, Plaintiff Ortiz is also seeking emotional damages related to the fear she felt and continues to fear for her daughter's life from the time she felt the impact of the collision, through the time her daughter complained of having glass in her back, and through the present day.

**Count III**
**NEGLIGENT HIRING (Broker Liability)**

130.     Plaintiffs incorporate by reference all preceding paragraphs as stated herein.

131.     At all times relevant to this action, Defendant Terry, was an agent, servant, and/or employee of Defendants ALLIANCE and BEN STRONG.

132.     Despite the fact that it is clear that at all times relevant to this action, Defendant Terry was a statutory agent of Defendants CSI, CSL, and/or CST it is understood and believed that Defendants CSI, CSL, and/or CST will take the position in this matter that they were acting as a broker and not a motor carrier.

133.     In the alternative to being a statutory employee of Defendant CSI, CSL, and/or CST, Defendants CSI, CSL, CST had a duty not to employ any person who posed an unreasonable risk to other persons who would foreseeably come into contact with that employee because of the employment relationship.

134.     Defendants CSI, CSL, and CST were required to see to it under the FMCSR that Defendants BEN STRONG and Terry were adhering to such regulations.

135.     Defendants CSI, CSL, CST, were negligent, careless, reckless, extreme and outrageous, wanton, and unlawful in hiring BEN STRONG and Terry in that each posed such an unreasonable risk and in failing to properly vet the driver.

136.     Defendants CSI, CSL, CST were negligent, careless, reckless, extreme and outrageous, wanton, and unlawfully in violation of the applicable rules and regulations in that they:

    a.    Failed to adequately supervise their drivers and operators, including Defendant Terry;

    b.    Failed to adequately perform background investigations and otherwise negligently hired unqualified or unfit individuals, including Defendant Terry;

    c.    Failed to take corrective measures for improper and unsafe activities of their drivers and operators, including Defendant Terry;

    d.    Permitted their drivers and operators, including Defendant Terry, to continue driving despite repetitive safety violations and in violation of motor carrier safety regulations;

    e.    Negligently hired and entrusted the operation of their trucks to drivers and operators, including Defendant Terry, who was incompetent, unfit, and reckless, to the extent that he had prior incidents involving reckless disregard of traffic signals;

    f.    Failed to train, retrain, monitor, correct, discipline, and/or reprimand Defendant Terry;

    g.    Failed to properly research Defendant Terry and/or BEN STRONG in order to determine his/its safety record;

    h.    Failed to abide by the applicable statues including all relevant State and Federal Statutes and regulations; and

    i.    Being otherwise negligent.

137.     Plaintiffs further assert the doctrines of *respondeat superior* and *res ipsa loquitor*.

138.     As a direct and proximate result of the negligent, careless, reckless, extreme and outrageous, and wanton conduct of Defendants CSI, CSL, and CST, Defendants' tractor-trailer crashed into Plaintiff Ortiz's vehicle, causing the injuries identified above.

139.     As a direct and proximate result of the aforementioned negligent, careless, reckless, extreme and outrageous, and wanton conduct of Defendants CSI, CSL, and CST, Plaintiff J.L. has suffered and will continue to suffer economic damages in all manner of forms including but not limited to medical care and bills, psychiatric care and bills, lost earning capacity, out of pocket losses for medical equipment and home modifications, expenses needed for reasonable accommodations in life, and other such damages.

140.     As a direct and proximate result of the aforementioned negligent, careless, reckless, extreme and outrageous, and wanton conduct of Defendants CSI, CSL, and CST, Plaintiff J.L. has suffered and will continue to suffer non-economic damages in the form of mental anguish, emotional pain and suffering, physical pain and suffering, loss of society, companionship, inconvenience, physical impairment, disfigurement, comfort, and all other such forms as recoverable under the law.

141.     As a direct and proximate result of the aforementioned negligent, careless, reckless, extreme and outrageous, and wanton conduct of Defendants CSI, CSL, and CST, Plaintiff Ortiz has suffered and will continue to suffer economic damages in all manner of forms including but not limited to medical care and bills, psychiatric care and bills, lost wages, lost earning capacity, out of pocket losses for medical equipment and home modifications, expenses needed for reasonable accommodations in life, and other such damages.

142.     As a direct and proximate result of the aforementioned negligent, careless, reckless, extreme and outrageous, and wanton conduct of Defendants CSI, CSL, and CST, Plaintiff Ortiz has suffered and will continue to suffer non-economic damages in the form of mental anguish, emotional pain and suffering, physical pain and suffering, loss of society, companionship, inconvenience, physical impairment, disfigurement, comfort, and all other such forms as recoverable under the law.

143.     As a direct and proximate result of the aforementioned negligent, careless, reckless, extreme and outrageous, and wanton conduct of Defendants CSI, CSL, and CST, Plaintiff Ortiz is also seeking emotional damages related to the fear she felt and continues to fear for her daughter's life from the time she felt the impact of the collision, through the time her daughter complained of having glass in her back, and through the present day.

**Count IV**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

144.     Each of the preceding paragraphs are incorporated herein by reference.

145.     At all times relevant to this action, Defendant Terry, was an agent, servant, and/or employee of Defendants ALLIANCE and BEN STRONG.

146.     At all times relevant to this action, Defendant Terry was a statutory agent of Defendants CSI, CSL, and/or CST.

147.     At all times relevant to this action, Defendant Terry, and thereby Defendants BEN STRONG, ALLIANCE, BSE, CSI, CSL, CST had a duty to maintain proper control of his vehicle, to obey the traffic and motor vehicle rules and regulations that were in full force and effect at the time of the collision, and obey the state and federal regulations with regard to the safe and lawful operation of a commercial motor vehicle on public roads.

148.     Defendant Terry, and thereby Defendants BEN STRONG, ALLIANCE, BSE, CSI, CSL, CST, was negligent, careless, reckless, extreme and outrageous, wanton, and unlawfully in violation of the applicable rules and regulations in that he:

     a.    Failed to keep a proper lookout while operating the tractor-trailer;
     b.    Failed to maintain control of the tractor-trailer at all times;
     c.    Operated the tractor-trailer when he was not medically, mentally, or physically capable of doing so in a safe and legal manner;
     d.    Operated the tractor-trailer at a speed greater than would permit safe stopping within a legal and/or reasonable and proper distance under the circumstances then existing;
     e.    Failed to maintain adequate attention to traffic and road conditions, and to the path of travel of his tractor-trailer prior to, and up to, the moment of impact with Plaintiffs' vehicle;
     f.    Crashed into the vehicle operated by Plaintiff Ortiz,
     g.    Failed to abide by the applicable statues including all relevant State and Federal Statutes and regulations; and
     h.    Was otherwise negligent.

149.     Plaintiffs further assert the doctrines of *respondeat superior* and *res ipsa loquitor*.

150.     Defendants CSI, CSL, and CST were required to see to it under the FMCSR that Defendants BEN STRONG and Terry were adhering to such regulations.

151.     Defendants CSI, CSL, CST, were negligent, careless, reckless, extreme and outrageous, wanton, and unlawful in hiring an employee that posed such an unreasonable risk and in failing to properly vet the driver.

152.     As a direct and proximate result of the negligent, careless, reckless, extreme and outrageous and wanton conduct of Defendant Terry, and thereby Defendants BEN STRONG, ALLIANCE, BSE, CSI, CSL, CST, as well as the independent extreme and outrageous conduct by CSI, CSL, CST, Defendants' tractor-trailer crashed into Plaintiff Ortiz vehicle, causing the injuries identified above.

153.     As a direct and proximate result of the negligent, careless, reckless, extreme and outrageous and wanton conduct of Defendant Terry, and thereby Defendants BEN STRONG, ALLIANCE, BSE, CSI, CSL, CST, as well as the independent extreme and outrageous conduct by, CSI, CSL, CST, Plaintiff Ortiz has suffered and will continue to suffer severe emotional distress.

154.     As a direct and proximate result of the negligent, careless, reckless, extreme and outrageous and wanton conduct of Defendant Terry, and thereby Defendants BEN STRONG, ALLIANCE, BSE, CSI, CSL, CST, as well as the independent extreme and outrageous conduct by CSI, CSL, CST, Plaintiff Ortiz is also seeking emotional damages related to the fear she felt and continues to fear for her daughter's life from the time she felt the impact of the collision, through the time her daughter complained of having glass in her back, and through the present day.

### Count V
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

155.     Each of the preceding paragraphs are incorporated herein by reference.

156.     At all times relevant to this action, Defendant Terry, was an agent, servant, and/or employee of Defendants ALLIANCE and BEN STRONG.

157.     At all times relevant to this action, Defendant Terry was a statutory agent of Defendants CSI, CSL, and/or CST.

158.     At all times relevant to this action, Defendant Terry, and thereby Defendants BEN STRONG, ALLIANCE, BSE, CSI, CSL, CST had a duty to maintain proper control of his vehicle, to obey the traffic and motor vehicle rules and regulations that were in full force and effect at the time of the collision, and obey the state and federal regulations with regard to the safe and lawful operation of a commercial motor vehicle on public roads.

159.     Defendant Terry, and thereby Defendants BEN STRONG, ALLIANCE, BSE, CSI, CSL, CST, was negligent, careless, reckless, extreme and outrageous, wanton, and unlawfully in violation of the applicable rules and regulations in that he:

a. Failed to keep a proper lookout while operating the tractor-trailer;
b. Failed to maintain control of the tractor-trailer at all times;
c. Operated the tractor-trailer when he was not medically, mentally, or physically capable of doing so in a safe and legal manner;
d. Operated the tractor-trailer at a speed greater than would permit safe stopping within a legal and/or reasonable and proper distance under the circumstances then existing;
e. Failed to maintain adequate attention to traffic and road conditions, and to the path of travel of his tractor-trailer prior to, and up to, the moment of impact with Plaintiffs' vehicle;
f. Crashed into the vehicle operated by Plaintiff Ortiz;
g. Failed to abide by the applicable statues including all relevant State and Federal Statutes and regulations; and
h. Was otherwise negligent.

160.     Plaintiffs further assert the doctrines of *respondeat superior* and *res ipsa loquitor*.

161.     Defendants CSI, CSL, and CST were required to see to it under the FMCSR that Defendants BEN STRONG and Terry were adhering to such regulations.

162.     Defendants CSI, CSL, CST, were negligent, careless, reckless, extreme and outrageous, wanton, and unlawful in hiring an employee that posed such an unreasonable risk and in failing to properly vet the driver.

163.     Defendants CSI, CSL, and/or CST intentionally conducted business in a manner in violation of the applicable statutes and regulations cited above.

164.     As a direct and proximate result of the negligent, careless, reckless, extreme and outrageous and wanton conduct of Defendant Terry, and thereby Defendants BEN STRONG, ALLIANCE, BSE, CSI, CSL, CST, as well as the independent extreme and outrageous conduct by CSI, CSL, CST, Defendants' tractor-trailer crashed into Plaintiff Ortiz vehicle, causing the injuries identified above.

165.     As a direct and proximate result of the negligent, careless, reckless, extreme and outrageous and wanton conduct of Defendant Terry, and thereby Defendants BEN STRONG, ALLIANCE, BSE, CSI, CSL, CST, as well as the independent extreme and outrageous conduct by, CSI, CSL, CST, Plaintiff Ortiz has suffered and will continue to suffer severe emotional distress.

166.     As a direct and proximate result of the negligent, careless, reckless, extreme and outrageous and wanton conduct of Defendant Terry, and thereby Defendants BEN STRONG, ALLIANCE, BSE, CSI, CSL, CST, as well as the independent extreme and outrageous conduct by CSI, CSL, CST, Plaintiff Ortiz is also seeking emotional damages related to the fear she felt and continues to fear for her daughter's life from the time she felt the impact of the collision, through the time her daughter complained of having glass in her back, and through the present day.

**WHEREFORE,** as a result of Counts I – V above, because Plaintiff J.L has and will suffer economic damages as well as non-economic damages in the non-inclusive form of severe emotional and mental pain and suffering due to the failures of Defendants, Plaintiff J.L. seeks damages in the amount of $50 million dollars, representing both economic and non-economic damages as allowed by law including mental pain and suffering, mental anguish, and mental and emotional well-being and Plaintiff Ortiz has and will suffered economic damages as well as non-economic damages in the non-inclusive form of severe emotional and mental pain and suffering due to the failures of Defendants, and seek damages in the amount of $25 million dollars, representing both economic

and non-economic damages as allowed by law including mental pain and suffering, mental anguish, and mental and emotional well-being.

**Count VI**
**<u>PUNITIVE DAMAGES</u>**

167.     Each of the preceding paragraphs are incorporated herein by reference.

168.     Defendants were grossly negligent and acted with actual malice and fraud.

169.     Plaintiffs also asserts the doctrines of *res ipsa loquitur* and *respondeat superior*.

170.     Plaintiffs thereby seek punitive damages for this fraudulent, willful, wanton, and malicious action in accordance with Maryland law.

**WHEREFORE**, in addition to the damages sought above for Counts I-V, Plaintiffs seek punitive damages against all named Defendants in the amount of $50,000,000.00.

**JURY TRIAL DEMAND**

Plaintiffs respectfully request a jury trial on all issued raised herein.


Dated: <u>October 17, 2018</u>

Respectfully submitted,


PAULSON & NACE, PLLC


/s/ Matthew A. Nace, Esq.
Matthew A. Nace, Esq. #29684
Barry J. Nace, Esq. #1194
1025 Thomas Jefferson St., NW
Suite 810
Washington, DC 20007
202-463-1999 – Telephone
202-223-6824 – Facsimile
man@paulsonandnace.com
bjn@paulsonandnace.com
*Counsel for Plaintiffs*

## **CERTIFICATE OF GOOD STANDING**

In accordance with Maryland Rule 1-313, I hereby certify that I am a member in good standing of the Maryland Bar and licensed to practice law in the State of Maryland with an office address in the District of Columbia.

Matthew A. Nace
Matthew A. Nace

## **CERTIFICATE OF GOOD STANDING**

In accordance with Maryland Rule 1-313, I hereby certify that I am a member in good standing of the Maryland Bar and licensed to practice law in the State of Maryland with an office address in the District of Columbia.

Barry J. Nace
Barry J. Nace
