## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CARLA ORTIZ, Individually, and on behalf of her daughter, J.L., a minor,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**BEN STRONG TRUCKING, INC.,** *et al.*<br><br>    **Defendants.** | **Civil Action No.: 1:18-cv-03230-CCB** |

## MEMORANDUM IN SUPPORT OF DEFENDANTS BEN STRONG TRUCKING, INC. AND JOHN OLIVER TERRY, JR.'S PARTIAL MOTION TO DISMISS AS TO COUNTS IV THROUGH VI OF PLAINTIFFS' COMPLAINT

Defendants, Ben Strong Trucking, Inc. ("Ben Strong") and John Oliver Terry, Jr. ("Mr. Terry") (collectively, the "moving Defendants"), by their undersigned counsel and pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and Local Rule 105.1, respectfully submit the following Memorandum in Support of their Partial Motion to Dismiss as to Counts IV through VI[1] of Plaintiffs' Complaint and, in support thereof, state as follows:

### I.    Plaintiffs' Allegations

Plaintiff Carla Ortiz ("Ortiz" or "Plaintiff"), individually, and on behalf of her thirteen-year-old daughter, J.L. ("J.L." or "minor Plaintiff") (collectively, "Plaintiffs"), filed the Complaint at issue (DE# 1; hereinafter the "Complaint"), which arises from a four (4)-vehicle motor vehicle accident that occurred on Interstate 95 North in Harford County, Maryland on the night of June 18, 2018 (the "accident"), while Plaintiff was driving  her daughter from North Carolina back to their home in New Jersey. *See* Compl. at ¶¶ 60-103. The Complaint alleges that Mr. Terry was driving a tractor-trailer on I-95 North when he negligently collided with the rear-

---

[1] Contemporaneously with this Partial Motion to Dismiss, the moving Defendants are filing an Answer to the remaining Counts of Plaintiffs' Complaint which are not subject to this Motion.

end of Plaintiffs' vehicle, after Plaintiff had slowed down with traffic due to construction-related lane closures. *See* Compl. at ¶¶ 60-75. The Complaint further alleges that Plaintiffs' vehicle then struck two other cars before coming to a rest, and that Plaintiff and minor Plaintiff suffered severe and permanent injuries as a result of the accident. *See* Compl. at ¶¶ 74-100.

Plaintiffs' Complaint asserts claims against seven (7) Defendants seeking damages resulting from the accident: (1) Mr. Terry, (2) Ben Strong, (3) Alliance Trucking and Logistics, LLC ("Alliance"), (4) Bowman Sales and Equipment, Inc. ("BSE"), (5) Cowan Systems, Inc. ("CSI"), (6) Cowan Systems, LLC ("CSL"), and (7) Cowan Systems Transportation, LLC ("CST") (collectively, "Defendants"). *See generally* Compl.

At the time of the accident, Plaintiffs allege that Mr. Terry was driving a 2011 Volvo truck tractor "that was owned by Alliance and being leased to Ben Strong" (Compl. at ¶ 68), and "hauling a trailer owned by BSE." Compl. at ¶ 69. Plaintiffs allege that the trailer was "carrying a load of shingles" that was being sold by "GAF Materials ('GAF')" to "Harvey Building Products in Southborough, MA," which Mr. Terry had been in the process of delivering at the time of the accident (the "Shipment"). Compl. at ¶¶ 45, 71. Regarding this delivery, the Complaint alleges that GAF "had a contract with CSI that required CSI to act as the motor carrier for the [S]hipment," that "on May 16, 2018 GAF requested that [CSI] deliver the Shipment," and that CSI "accepted the Shipment" and "held itself out" as "the motor carrier of the Shipment." Compl. at ¶¶ 45-56. The Complaint further alleges that "CSI, CSL, and/or CST contracted with Ben Strong to deliver the Shipment" and that "CSI, CSL, and/or CST accepted the contract rate from GAF and also accepted a brokerage fee from sending the Shipment to Ben

Strong." Compl. at ¶¶ 50-59.[2] "In the alternative," the Complaint alleges in that "CSI, CSL, and/or CST" were "acting as a broker and not a motor carrier" regarding the Shipment. *See* Compl. at ¶¶ 132-133.[3]

Plaintiffs' Complaint alleges causes of action in six (6) separately numbered Counts stemming from the accident: (I) "Negligence," (II) "Negligent Hiring," (III) "Negligent Hiring (Broker Liability)," (IV) "Negligent Infliction of Emotional Distress" (hereinafter, "NIED"), (V) "Intentional Infliction of Emotional Distress" (hereinafter, "IIED"), and (VI) "Punitive Damages." *See* Compl. at ¶¶ 104-170. For Counts I through V, Plaintiffs seek a total of $75,000,000.00 in economic and non-economic damages, and in addition, Plaintiffs seek punitive damages in the amount of $50,000,000.00 against all named Defendants in Count VI.

As the basis for Plaintiffs' negligence claim (Count I), the Complaint states that Plaintiffs "assert the doctrines of *respondeat superior* and *res ipsa loquitor*,"[4] and alleges that Mr. Terry ("and thereby… Ben Strong [and the other Defendants]"), was negligent in that Mr. Terry:

    a.    Failed to keep a proper lookout while operating the tractor-trailer;

    b.    Failed to maintain control of the tractor-trailer at all times;

    c.    Operated the tractor-trailer when lie was not medically, mentally, or physically capable of doing so in a safe and legal manner;

    d.    Operated the tractor-trailer at a speed greater than would permit safe stopping within a legal and/or reasonable and proper distance under the circumstances then existing;

    e.    Failed to maintain adequate attention to traffic and road conditions, and to the path of travel of his tractor-trailer prior to, and up to, the moment of impact with Plaintiffs' vehicle;

    f.    Crashed into the vehicle operated by Plaintiff Ortiz;

    g.    Failed to abide by the applicable statues including all relevant State and

---

[2] Allegedly, "[t]he manner in which CSI, CSL, and/or CST orchestrated the Shipment to be picked up by Ben Strong" was "done in the usual and customary practice of CSI, CSL, and/or CST" and "in contravention of the applicable statutes and regulations." Compl. at ¶¶ 58-59.

[3] The Complaint further claims that "[Mr.] Terry was an agent, servant, and/or employee of Ben Strong," that "[Mr.] Terry was a statutory employee of Defendants CSI, CSL, and/or CST," and that "Ben Strong was a statutory employee of Defendants CSI, CSL, and/or CST." Compl. at ¶¶ 25-27.

[4] Plaintiffs purport to "assert the doctrines of *respondeat superior* and *res ipsa loquitor*," in all of the Complaint's six (6) Counts. *See* Compl. at ¶¶ 109, 123, 137, 149, 160, 169.

Federal Statutes and regulations; and
h.      Was otherwise negligent.

Compl. at ¶¶ 108-109. The Complaint repeats the exact same conclusory allegations above, verbatim, as the basis for Plaintiffs' claims of NIED in Count IV (*see* Compl. ¶¶ 148) and IIED in Count V (*see* Compl. at ¶ 159) against Mr. Terry and Ben Strong.[5]

In Count II (entitled, "Negligent Hiring"), Plaintiffs further allege that all Defendants were negligent for "hiring an employee that posed such an unreasonable risk and in failing to properly vet the driver." Compl. at ¶¶ 121-122.[6] While not applicable to Mr. Terry or Ben Strong, in Count III (entitled, "Negligent Hiring (Broker Liability)"), Plaintiffs allege that "CSI, CSL, CST" were negligent "in hiring Ben Strong and Terry... and in failing to properly vet the driver." Compl. at ¶¶ 135-136.

As further detailed below, Count IV for NIED must be dismissed because it is well established that Maryland does not recognize the tort of NIED, Count VI seeking punitive

---

[5] Under Count IV, Plaintiffs make additional allegations as to the purportedly tortious conduct of "Defendants CSI, CSL, and CST" (*see* Compl. at ¶¶ 150-151), which the Complaint refers to as "the independent extreme and outrageous conduct by CSI, CLS, CST." *See* Compl. at ¶¶ 152-153. Likewise, under Count V, Plaintiffs make additional allegations as to the purportedly tortious conduct of "Defendants CSI, CSL, and CST" (*see* Compl. at ¶¶ 161-163), which the Complaint again refers to as "the independent extreme and outrageous conduct by CSI, CLS, CST." *See* Compl. at ¶¶ 164-166.

[6] In Count II, the Complaint further alleges that all Defendants:
   a. Failed to adequately supervise their drivers and operators, including Defendant Terry;
   b. Failed to adequately perform background investigations and otherwise *negligently* hired unqualified or unfit individuals, including Defendant Terry;
   c. Failed to take corrective measures for improper and unsafe activities of their drivers and operators, including Defendant Terry;
   d. Permitted their drivers and operators, including Defendant Terry, to continue driving despite repetitive safety violations and in violation of motor carrier safety regulations;
   e. Negligently hired and entrusted the operation of their trucks to drivers and operators, including Defendant Terry, who was incompetent, unfit, and reckless, to the extent that he had prior incidents involving reckless disregard of traffic signals;
   f. Failed to train, retrain, monitor, correct, discipline, and/or reprimand Defendant Terry;
   g. Failed to properly research Defendant Terry and/or BEN STRONG in order to determine his/its safety record;
   h. Failed to abide by the applicable statues including all relevant State and Federal Statutes and regulations; and
   i. Being otherwise negligent.
Compl. at ¶ 122. *See also* Compl. at ¶ 136 (making same allegations, verbatim, against "CSI, CSL, CST" in Count III for "Negligent Hiring (Broker Liability)").

damages must be dismissed because the Complaint falls far short of alleging facts sufficient to show that Mr. Terry or Ben Strong acted with actual malice, and Count V for IIED must be dismissed because the Complaint fails to allege three (3) out of four (4) of the required elements of that tort with the required specificity.

## II.     Standard for Granting Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Under *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when ruling on Rule 12(b)(6) motions to dismiss, a court must accept as true the well-pleaded factual allegations contained in the complaint; however, no such deference is afforded to "the legal conclusions drawn from the facts," or any "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citations omitted). Further, *Twombly* created a new factual plausibility standard by requiring facts that "raise the right to relief above the speculative level" to the plausible level in order for the claim to survive the motion to dismiss. *Twombly*, 550 U.S. at 555. The Court in *Iqbal* reiterated the statement in *Twombly* that "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).[7]

---

[7] *See also Roginsky v. Blake*, 131 F. Supp. 2d 715, 717-18 (D.Md. 2000), *aff'd*, 238 F.3d 414 (4th Cir. 2000) ("The Court, however, is not bound to accept as true a legal conclusion couched as a factual allegation. Nor is the Court bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged," and "a complaint may be dismissed as a matter of law if it lacks a cognizable legal theory, or it alleges insufficient facts under a cognizable legal theory") (internal citations and quotation marks omitted).

## III.  **Argument**

### A.  **The Complaint is deficient in telescoping all seven (7) Defendants into one.**

Preliminarily, Plaintiffs improperly attempt to lump all seven (7) Defendants together and hold each Defendant vicariously liable for all acts and omissions of each and every other Defendant, vaguely alleging in the Complaint:

> Each Defendant was the agent, servant, employer, employee, partner, and/or joint venturer of each and every other Defendant and at all relevant times was acting in the course and scope and in furtherance of such relationship, or other capacity, so as to give rise to vicarious liability, each liable for the acts or omissions of the other. Further, each authorized, ratified, and adopted the acts of the other.

Compl. at ¶ 28. Even assuming *arguendo* this were anything more than a bald legal conclusion entitled to no weight by the Court (which it is),[8] Plaintiffs have not plead any *facts* even remotely approaching any theory that would permit so utterly disregarding the well-established presumption of the formal separation of legal entities under settled hornbook law.[9] Rather, the only facts alleged in the Complaint as to the purported relationship between the moving Defendants and Alliance is that Alliance "leased" a tractor truck to Ben Strong (Compl. at ¶ 68); the only facts alleged as to the relationship between the moving Defendants and BSE is that Mr. Terry had been "hauling a trailer owned by BSE" (Compl. at ¶ 69); and the only facts alleged as to the relationship between the moving Defendants and "CSI, CSL, and/or CST" is that "CSI, CSL, and/or CST contracted with Ben Strong  to deliver the Shipment" and that "CSI, CSL,

---

[8] At the outset, this vague allegation itself is nothing more than a legal conclusion devoid of factual support which is entitled to no weight by the Court. *See, e.g., Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir.2008) (courts "need not accept the legal conclusions" in a complaint); *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 547 (4th Cir. 2013), citing *Iqbal*, 556 U.S. at 681 (holding that a plaintiff's allegation "that funds from [one entity] were comingled with funds from [another entity]," is "conclusory, and not entitled to a presumption of truth" under *Iqbal*).

[9] *See, e.g., Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 981 (4th Cir. 1987) (citation omitted) ("The doctrine of limited liability remains the rule" and "the fiction of corporate separateness" is "accorded the greatest judicial deference"); *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation omitted) ("[A] corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances").

and/or CST... accepted a brokerage fee from sending the Shipment to Ben Strong." Compl. at ¶¶ 50-59.

In this case, Plaintiffs have not made any claim for civil conspiracy,[10] nor could they in good faith, and Plaintiffs have not plead any *facts* to hold the moving Defendants liable for the actions of, or to treat them as one and the same as, Alliance, BSE, CSI, CSL, and/or CST. *See, e.g., Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 981 (4th Cir. 1987) ("The doctrine of limited liability remains the rule" and "the fiction of corporate separateness" is "accorded the greatest judicial deference") (citation omitted).

### B.   Count IV of the Complaint must be dismissed because Maryland law does not recognize a cause of action for negligent infliction of emotional distress.

Count IV purports to state a claim for "Negligent Infliction of Emotional Distress." *See* Compl. at ¶¶ 144-154. As a matter of law, Count IV of the Complaint must be dismissed because it is well established that Maryland[11] does not recognize a cause of action for NIED.

As this Court has ruled: "Maryland does not recognize an independent claim for negligent infliction of emotional distress." *Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462, 482 (D. Md. 2002), *aff'd sub nom. Skipper v. Giant Food Inc.*, 68 F. App'x 393 (4th Cir. 2003).[12] In *Carson*, this Court ruled upon the "cognizability of various state law claims," and this Court determined that the defendants were entitled to judgment as a matter of law on the plaintiffs'

---

[10] Under Maryland law, a civil conspiracy is defined as "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Hoffman v. Stamper*, 385 Md. 1, 24 (2005) (quoting *Green v. Wash. Sub. San. Comm'n*, 259 Md. 206, 221 (1970)). In addition to proving an agreement, "the plaintiff must also prove the commission of an overt act, in furtherance of the agreement, that caused the plaintiff to suffer actual injury." *Id.*

[11] *See Greenebaum v. Williams*, 788 F. Supp. 260, 261 (D. Md. 1992) (citing *Wilson v. Ford Motor Co.*, 656 F.2d 960 (4th Cir. 1981)) ("in a diversity case..., the elements of the claim or defense at issue, as well as the proof standard, must be taken from the law of the forum state...").

[12] Citing *Miller v. Bristol–Myers Squibb Co.*, 121 F.Supp.2d 831, 839 (D.Md.2000); *Lapides v. Trabbic*, 134 Md.App. 51 (2000); *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46 (1986), *cert. denied,* 306 Md. 18 (1986).

"negligent infliction of emotional distress" claims because Maryland law does not recognize such a tort and does not permit recovery on a claim for NIED. *Id.* at 482. This Court's ruling in *Carson* was based upon well settled law as articulated by Maryland's appellate courts.

In *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46 (1986), *cert. denied*, 306 Md. 18 (1986), the appellants complained that the trial judge erred "[i]n dismissing the claim for negligent infliction of emotional distress on the ground that Maryland does not recognize that cause of action ..." *Hamilton*, 66 Md.App. at 50. The appellants argued "that Maryland recognizes, at least implicitly, a cause of action for negligent infliction of emotional distress." *Id.* at 61. As the *Hamilton* Court flatly ruled in rejecting the appellants' argument: "They are wrong." *Id.* The *Hamilton* Court noted that neither of Maryland's appellate courts had ever suggested that Maryland recognizes or should establish the tort of NIED, and that "while other jurisdictions may allow recovery under the concept of negligent infliction of emotional distress Maryland does not." *Id.* at 62-63.

It has been reaffirmed numerous times that Maryland does not recognize a cause of action for NIED.[13] Thus, Count IV of the Complaint does not present a cognizable claim under

---

[13] *See, e.g., Alban v. Fiels*, 210 Md. App. 1, 16 (2013) ("Maryland does not recognize the tort of negligent infliction of emotional distress"); *Lapides v. Trabbic*, 134 Md. App. 51, 66 (2000) ("Because Maryland does not recognize the separate and distinct tort of negligent infliction of emotional distress, the lower court properly granted appellee's motion to dismiss appellant's claim for negligence"); *Chew v. Meyer*, 72 Md.App. 132, 139 (1987) ("we may summarily dispose of [plaintiff's] arguments concerning his count for negligent infliction of emotional distress. This state does not recognize such an independent tort"); *Williams v. Prince George's Cty.*, 112 Md. App. 526, 556 (1996) ("Maryland does not recognize the separate and distinct tort of negligent infliction of emotional distress. Therefore, the lower court properly granted appellees' motion to dismiss appellant's claim for negligent infliction of emotional distress"); *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 517 (1995) ("Maryland does not recognize the tort of 'negligent infliction of emotional distress' as an independent cause of action") (citation omitted); *Abrams v. City of Rockville*, 88 Md. App. 588, 593-94 (1991) ("Count II was dismissed on the ground that Maryland does not recognize negligent infliction of emotional distress as an independent tort. ... As we observed, Count II was dismissed principally because it did not present a cognizable claim under Maryland law. The court was entirely correct in so concluding") (citation omitted); *Miller v. Bristol-Myers Squibb Co.*, 121 F. Supp. 2d 831, 839 (D. Md. 2000) ("Plaintiff also asserts a claim for negligent infliction of emotional distress. Maryland does not recognize an independent tort for negligent infliction of emotional distress. ... Therefore, the Court finds that Plaintiff has no legally cognizable claim for negligent infliction of emotional distress") (citations omitted); *Kohler v.*

Maryland law, and therefore, should be dismissed with prejudice. *See, e.g., Roginsky,* 131 F. Supp. 2d at 717-18, *aff'd,* 238 F.3d 414 (4th Cir. 2000) ("a complaint may be dismissed as a matter of law if it lacks a cognizable legal theory, or it alleges insufficient facts under a cognizable legal theory").

**C.      Count VI of the Complaint must be dismissed because Plaintiffs' allegations do not satisfy the heightened pleading standard for punitive damages.**

In Count VI, the Complaint also seeks "punitive damages against all named Defendants in the amount of $50,000,000.00." Compl., p. 26.  However, Plaintiffs have failed to articulate a cognizable basis for the recovery of punitive damages under Maryland law.

"[A] plaintiff has no right or entitlement to punitive damages under Maryland law." *Bowden v. Caldor, Inc.,* 350 Md. 4, 25, 710 A.2d 267 (1998). The Court of Appeals holds that "in order to recover punitive damages in *any* tort action in the State of Maryland, facts sufficient to show *actual malice* must be pleaded and proven by clear and convincing evidence." *Scott v. Jenkins*, 345 Md. 21, 29 (1997) (emphasis in original). "Actual malice 'has been characterized as the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'" *Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 296 (D. Md. 2005) (quoting *K & K Mgmt., Inc. v. Lee,* 316 Md. 137, 175 (1989)). *See also, e.g., Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 461 (1992) ("the plaintiff must prove that the defendant's conduct was characterized by an evil motive or intent to injure, or defraud the plaintiff").

---

*Shenasky*, 914 F. Supp. 1206, 1212 n.5 (D. Md. 1995) (citing *Hamilton,* 66 Md.App. 46, *cert. denied,* 306 Md. 118) ("Plaintiff has alleged a claim for negligent infliction of emotional distress, a cause of action expressly rejected by the Maryland Court of Appeals"); *Marrs v. Marriott Corp.*, 830 F. Supp. 274, 284 n. 7 (D. Md. 1992) (citing *Hamilton,* 66 Md.App. 46, *cert. denied,* 306 Md. 118 ) ("[Plaintiff] also asserted in this count, a claim for negligent infliction of emotional distress. Maryland does not recognize this tort").

The Court of Appeals has also explained that plaintiffs must plead actual malice with "a high degree of specificity." *Scott,* 345 Md. at 36. Conclusory allegations of actual malice are insufficient; rather, the Court ruled that a plaintiff must "'allege *in detail* in his complaint the facts that indicate the entertainment by the defendant of [an evil motive or intent].'" *Id.* at 34 (quoting John A. Lynch, Jr. & Richard W. Bourne, Modern Maryland Civil Procedure § 6.5(b)(2) (1993)) (emphasis and brackets in original).[14]

In Count VI, Plaintiffs make no new allegations of fact, but rather simply refer to the Complaint's "preceding paragraphs," then baldy claim that "Defendants were grossly negligent and acted with actual malice and fraud," and assert that "Plaintiffs thereby seek punitive damages for this fraudulent, willful, wanton, and malicious action in accordance with Maryland law." *See* Compl. at ¶¶ 168-170. These allegations, however, are nothing more than unsupported legal conclusions, which are entitled to no weight by the Court under *Iqubal* and *Twyobly*. *See, e.g., E. Shore Markets, Inc.,* 213 F.3d at 180. Moreover, as this Court has noted, under Maryland law, "[c]onclusory allegations of actual malice are insufficient[.]" *Dow v. Jones*, 232 F. Supp. 2d 491, 496 (D. Md. 2002). The allegations in Count VI fail to state anything more than conclusory allegations.

Plaintiffs have also failed to articulate any cognizable factual basis to overcome the stringent standard for punitive damages. Plaintiffs have not and cannot plead specific facts that evidence that Mr. Terry or Ben Strong had an evil motive or intent to injure Plaintiffs or intentionally defrauded Plaintiffs, *i.e.,* actual malice. *See Zenobia*, 325 Md. at 461. Plaintiffs have not asserted a claim for fraud, nor alleged any facts that would support such a claim. Aside

---

[14] *See also id.* at 37 ("In sum, in order to properly plead a claim for punitive damages, a plaintiff must make a specific demand for that relief in addition to a claim for damages generally, as well as allege, in detail, facts that, if proven true, would support the conclusion that the act complained of was done with 'actual malice.' Nothing less will suffice").

from their failure to plead facts, Plaintiffs fail to even make conclusory assertions of the elements of a fraud claim.[15] Moreover, even if the actions alleged by the Plaintiffs were true, there is no allegation that Mr. Terry or Ben Strong had any intent or motive to hurt the Plaintiffs, no allegation that they harbored any ill will or malice towards Plaintiffs, and no allegation that any action was done with the evil intent to cause the accident or injure people. Of course, there is absolutely no evidence for such allegations. Additionally, on its face, the conduct alleged in the Complaint is not of the type for which punitive damages are allowable under Maryland law.[16]

At most, Plaintiffs' allegations may amount to negligence, however, Plaintiffs do not and cannot allege that Mr. Terry or Ben Strong's actions were characterized by any evil motive, intent to injure, ill will, or fraud against them necessary to rise to the level of actual malice that must be shown to overcome the stringent standard for punitive damages. As the Complaint falls far short of alleging facts sufficient to show actual malice, Count VI claiming punitive damages must be dismissed. *See, e.g., Scott*, 345 Md. at 37 ("a plaintiff must... allege, in detail, facts that,

---

[15] *See, e.g., Maryland Envtl. Tr. v. Gaynor*, 370 Md. 89, 97 (2002) (stating that required elements of fraud claim are: "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation") (citation omitted). *See also, e.g., Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 295 (D. Md. 2005) ("When alleging fraud, a plaintiff must specify 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby'") (citation omitted).

[16] *See, e.g., Greenebaum v. Williams*, 788 F. Supp. 260, 261 (D. Md. 1992) (In personal injury action by plaintiff who was injured in automobile collision with driver who was heavily intoxicated by illegal drugs, the Court explained: "the Court will assume that the plaintiff could prove, by clear and convincing evidence... that Williams drove his company vehicle in a state of extreme, voluntary drug intoxication, that he knew or should have known of the danger such conduct posed to other drivers on the interstate highway, and that he acted with conscious or deliberate disregard of the consequences. Even with the foregoing assumptions, though, the plaintiff would have no entitlement to punitive damages under the flat holding of *Zenobia*, 325 Md. at 460... No matter how broadly taken in plaintiff's favor, the facts here could not support, by clear and convincing evidence, the presence of actual malice as so defined [by *Zenobia* as conduct characterized by evil motive, intent to injure, ill will, or fraud]"); *Komornik v. Sparks*, 331 Md. 720, 722-31 (1993) (holding punitive damages were not sustainable in personal injury action by plaintiff who was injured in a four-vehicle automobile accident caused by a drunk driver who failed to brake when approaching a stoplight— in which the defendant had a blood alcohol content of .19, had several prior DWI's, and had been driving with a suspended license—even though driving may have been grossly negligent, there were no allegations or evidence that the defendant driver intended to injure the plaintiff or had actual malice towards the plaintiff).

if proven true, would support the conclusion that the act complained of was done with 'actual malice.' Nothing less will suffice").

**D.     Count V of the Complaint must be dismissed because Plaintiffs' allegations are insufficient to support a claim for IIED.**

In Count V, Plaintiffs seek a recovery for IIED. *See* Compl. at ¶¶ 155-165. Under Maryland law, "[t]he tort of intentional infliction of emotional distress is rarely viable." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 514-15 (1995), *cert. denied*, 341 Md. 172 (1996) (quoting *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 670 (1992)).[17] The tort is "to be used sparingly" and "only for opprobrious behavior that includes truly outrageous conduct." *Id.* The requirements of the tort "are rigorous, and difficult to satisfy." *Id.* "Maryland courts have limited recovery to the most extreme and unusual circumstances." *Hrehorovich*, 93 Md. App. at 799. This case involves a motor vehicle accident with tragic consequences alleged. But the technical elements needed to satisfy a cause of action of IIED are simply not pled in accordance with applicable law.

In *Harris v. Jones*, the Court of Appeals held that there are "four elements which must coalesce to impose liability for intentional infliction of emotional distress," which are:

(1) The conduct must be intentional or reckless;
(2) The conduct must be extreme and outrageous;
(3) There must be a causal connection between the wrongful conduct and the emotional distress; and
(4) The emotional distress must be severe.

281 Md. 560, 566 (1977). "**Each of these elements must be pled and proved <u>with specificity</u>.**"

*Foor v. Juvenile Servs. Admin.*, 78 Md. App. 151, 175, *cert. denied*, 316 Md. 364 (1989)

---

[17] *See also, e.g., Robinson v. Cutchin*, 140 F. Supp. 2d 488, 494 (D. Md. 2001) ("The tort of intentional infliction of emotional distress is rarely viable in a case brought under Maryland law") (citation omitted); *Takacs v. Fiore*, 473 F.Supp.2d 647, 652 (D. Md. 2007) ("IIED claims are rarely viable in a case brought under Maryland law") (citation and quotation marks omitted).

(citations omitted) (emphasis added). *See also Silkworth v. Ryder Truck Rental, Inc.*, 70 Md.

App. 264, 271 (1987), *cert. denied*, 310 Md. 2 (1987) ("**These are stringent standards, and**

**each must be pled and proved <u>with particularity</u>**") (emphasis added).  "It is not enough for a

plaintiff merely to allege that they exist; he must set forth facts that, if true, would suffice to

demonstrate that they exist." *Id.*  Additionally, "each of these four requirements must be satisfied

completely before a cause of action will lie; meeting even one element less than fully will not

suffice. Moreover, the initial determination of whether these elements have been satisfied rests

with the trial judge." *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 58, *cert denied,* 306

Md. 118 (1986) (citations omitted).[18]

As was the case in *Beye v. Bureau of National Affairs,* 59 Md.App. 642, 658, *cert.*

*denied* 301 Md. 639 (1984), "[a]lthough some of the proper adjectives and adverbs are present,

the underlying allegations fall far short of establishing … the four elements." Application of

established law to the facts pled in Plaintiffs' Complaint readily shows that Mr. Terry and Ben

Strong are entitled to a dismissal of the Plaintiffs' IIED claim, as Plaintiffs' allegations fail to

establish at least the first, second, and fourth required elements.

### 1.    <u>Plaintiffs fail to sufficiently allege the first or second required elements of IIED.</u>

To satisfy the first element (the "intentional or reckless" criterion), "the plaintiff must

allege and prove that the defendant either *desired* to inflict severe emotional distress, *knew* that

such distress was *certain or substantially certain* to result from his conduct, or acted recklessly

in deliberate disregard *of a high degree of probability* that the emotional distress will follow."

*Foor*, 78 Md. App. at 175 (emphasis in original). The Court went on to explain that:

---

[18] *See also Hrehorovich v. Harbor Hosp. Ctr., Inc.*, 93 Md. App. 772, 800 (1992) (the failure of any one element "will defeat the cause of action") (citation omitted).

13

> Although for purposes of a negligence action, foreseeability need extend only to a general range of harm, to establish this intentional tort, the foreseeable consequence must be far more precise, for it is the achievement of that consequence, from which the distress is expected to arise, that lies at the heart of the tort.

*Id. See also Bagwell,* 106 Md. App. at 514-15, *cert. denied,* 341 Md. 172 (the conduct must be "of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind").

"To satisfy the second element, the conduct in question must 'completely violate human dignity,' and 'strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Interphase Garment Sols., LLC v. Fox Television Stations, Inc.,* 566 F. Supp. 2d 460, 466 (D. Md. 2008) (quoting *Hamilton,* 66 Md. App. at 59-60, *cert denied,* 306 Md. 118). *See also Batson v. Shiflett,* 325 Md. 684, 735 (1992) (quoting Restatement (Second) of Torts § 46) ("It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct *has been characterized by 'malice,'* or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community") (emphasis in original).

In Count V, Plaintiffs make allegations that are by their very nature claims of negligence, not intentional conduct. *See, e.g.,* Compl. at ¶ 159 (alleging, *inter alia,* that Mr. Terry, and thereby Ben Strong, "[f]ailed to keep a *proper* lookout while operating the tractor-trailer;" "[o]perated the tractor-trailer at a speed greater than would permit safe stopping within a... *reasonable and proper distance under the circumstances* then existing;" and "[f]ailed to maintain

14

*adequate* attention to traffic and road conditions..."). Indeed, the Complaint repeats the exact same conclusory allegations against the moving Defendants, verbatim, as the basis for Plaintiffs' claim of negligence in Count I (*see* Compl. at ¶ 108), as the basis for Plaintiffs' claim of IIED in Count V. *See* Compl. at ¶ 159. *See also, e.g., Vance v. CHF Int'l*, 914 F. Supp. 2d 669, 683 (D. Md. 2012) (dismissing plaintiff's IIED claim, noting: "the alleged failure to provide security is, at best, an averment of negligence, not intentional action, and the tort of negligent infliction of emotional distress is not recognized in Maryland"). As discussed above, Plaintiffs do not, and cannot, aver that Mr. Terry or Ben Strong intentionally caused the accident or injured Plaintiffs. Nor do the Plaintiffs claim that Mr. Terry or Ben Strong intended to inflict emotional distress upon the Plaintiffs. Finally, while cases of alleged negligence in automotive accidents are certainly not desirable, they are frequent within our current litigation system and negligent operation of a motor vehicle cannot be said to constitute conduct deemed to "'completely violate human dignity,' and 'strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Interphase Garment Sols., LLC*, 566 F. Supp. 2d at 466 (citations omitted).

It is also useful to examine those cases in which Maryland Courts have allowed claims for IIED. A survey by the Maryland Court of Appeals in *Batson, supra*, revealed only three (3) cases in which the tort was found to exist. Those cases were *Figueirdeo-Torres v. Nickel*, 321 Md. 642 (1991) (psychologist had sexual relations with the plaintiff's wife during the time when he was treating the couple as their marriage counselor); *B.N. v. K.K.*, 312 Md. 135 (1988) (physician did not tell nurse with whom he had sexual intercourse that he had herpes); *Young v. Hartford Accident & Indemnity*, 303 Md. 182 (1985) (worker's compensation insurer's "sole purpose" in insisting that claimant submit to psychiatric examination was to harass her and force

15

her to abandon her claim or to commit suicide). *Batson*, 325 Md. at 734. What these cases have in common, unlike the case at bar, is that the conduct was intentional and outrageous. These are not cases involving the alleged negligent operation of an automobile.

If Count V of the Plaintiffs' Complaint is allowed to stand in the case at bar, virtually any motor vehicle accident would give rise to claims for IIED. This would be a gross distortion of Maryland jurisprudence. Similarly, allowing a claim for IIED to proceed based upon an allegation that a defendant knew that its conduct could cause physical harm to the plaintiff, would transform nearly every tort claim into a claim for IIED. Such a radical result is not consistent with the Court of Appeals' admonition that liability for this tort "should be imposed sparingly." *Figueiredo-Torres*, 321 Md. at 642. For these reasons, Plaintiffs' Complaint fails to sufficiently pled with specificity the requisite outrageous and extreme intentional action, and Count V of Plaintiffs' Complaint should be dismissed.

## 2.   **Plaintiffs fail to sufficiently allege the fourth required element of IIED.**

While the Plaintiffs' failure to plead just one of the required elements defeats the cause of action for IIED, Plaintiffs have also failed to meet the pleading requirements of the fourth element of IIED. The Court of Appeals holds that there is a "high burden imposed by the requirement that a plaintiff's emotional distress be severe." *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 368-69 (2000). To satisfy this fourth element, "'one must suffer an emotional response so acute that no reasonable person could be expected to endure it. One must be unable to function, one must be unable to tend to necessary matters.'" *Interphase Garment Sols., LLC*, 566 F. Supp. 2d at 466 (quoting *Reagan v. Rider*, 70 Md.App. 503, 512 (1987)). Plaintiffs are required to allege "a severely disabling emotional response" that includes "with reasonable

certainty the nature, intensity or duration of the alleged emotional injury." *Manikhi,* 360 Md. at

370. In *Manikhi,* the Court of Appeals found that dismissal of plaintiff's IIED claim was proper

where the plaintiff failed to allege "evidentiary particulars" such as "whether the medical

treatment that she was forced to seek was of a psychological or physical nature, how long the

treatment lasted, whether it was successful or is still continuing, whether it was periodic or

intensive, and so forth." *Id.* "Broad allegations of emotional distress—without evidentiary

particulars—lack the level of severity necessary to allege intentional infliction of emotional

distress." *Bragg v. Harco Distributors, Inc.,* No. CIV. WDQ-13-1950, 2014 WL 509524, at *4

(D. Md. Feb. 6, 2014) (citing *Manikhi,* 360 Md. at 370). Here, Plaintiffs' IIED claim also fails to

allege sufficient facts to demonstrate that any emotional distress was severe, and Count V should

be dismissed for this independent reason.

Plaintiffs' Complaint alleges generally that Plaintiff and minor Plaintiff suffered and will

continue to suffer "mental anguish, emotional pain and suffering, physical pain and suffering,

loss of society, companionship, inconvenience, physical impairment, disfigurement, and

comfort." *See* Compl. at ¶¶ 95, 100, 112, 114, 126, 128, 140, 142.[19] To the extent that Plaintiffs

set forth factual matter in the Complaint, as opposed to broad and conclusory claims, it does not

meet the standard for pleading that Plaintiffs have suffered severe, debilitating emotional

distress. To the contrary, this Court has repeatedly dismissed claims with similar allegations.

For example, in *Takacs v. Fiore,* 473 F.Supp.2d 647 (D. Md. 2007), this Court dismissed

the plaintiff's IIED claim, explaining: "While [the plaintiff] alleges debilitating conditions,

---

[19] *See also* Compl. at ¶ 81 ("[b]oth Plaintiffs experienced several [*sic*] physical and emotional pain and suffering...
and such damages continue to this day"); Compl. at ¶ 87 ("During her admission at Johns Hopkins, [minor Plaintiff]
frequently had nightmares of the crash... that would cause her to wake up in severe emotional distress. These
traumatic experiences continue to occur and it is believed that they will continue to occur into the future"); Compl.
at ¶¶ 153, 165 ("Plaintiff Ortiz has suffered and will continue to suffer severe emotional distress"); Compl. at ¶¶
115, 129, 143, 154, 166 ("Plaintiff Ortiz is also seeking emotional damages related to the fear she felt and continues
to fear for her daughter's life from the time she felt the impact of the collision... through the present day").

including 'severe depression, anxiety, sleeplessness, headaches and [being] sick to her stomach,' **she does not allege that she has been unable to function on a daily basis**, even if her functioning is presumably affected by her psychological and physical distress." *Id.* at 652 (emphasis added). Thus, the Court rejected the plaintiff's contention that she "suffered a severely disabling emotional response...as a legal conclusion which is not warranted by the other facts pled and does not prevent dismissal of her claim." *Id.*

Likewise in *Bragg v. Harco Distributors, Inc.*, No. CIV. WDQ-13-1950, 2014 WL 509524, at *4 (D. Md. Feb. 6, 2014), this Court dismissed the plaintiff's IIED claim where the plaintiff alleged that he suffered "extreme emotional distress, loss of sleep, anxiety and major inconvenience," on the basis that "[t]hese general allegations do not sufficiently plead severe emotional distress." *Id.* (citations omitted). *See also, e.g., Hejirika v. Maryland Div. of Correction*, 264 F. Supp. 2d 341, 348-49 (D. Md. 2003) (granting defendants' motion to dismiss plaintiffs' claims for IIED where plaintiffs' alleged that defendants' conduct had "a negative impact on [their] sleep patterns, and energy level and has resulted in chronic low self-esteem and stress," because plaintiffs "have not alleged that [defendants' conduct] has disrupted their ability to function on a daily basis").[20]

---

[20] *See also, e.g., Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F.Supp. 720, 748-50 (D.Md. 1996) (the plaintiff felt demeaned, humiliated and suffered extreme mental anguish and outrage, in addition, the plaintiff suffered from irritable bowel syndrome, needed counseling by a therapist, had disturbed sleep, was in a depressed mood and was placed on antidepressant drugs by a doctor. Still, the Court found that there was no severe distress because the distress did not interfere with the plaintiff's ability to attend work or look for a new job); *Hinks v. Board of Educ. of Harford County*, 2010 WL 1664084, *5 (D. Md. April 20, 2010) (plaintiff's allegation that the "Defendants' misconduct has proximately caused the Plaintiff to suffer extreme emotional distress and physical manifestations thereof" was insufficient to state a claim for IIED); *Ragland v. A.W. Indus., Inc.*, 2009 WL 2507426, *13 (D. Md. Aug. 13, 2009) (plaintiff's allegation that he suffered "severe emotional distress" was insufficient as it provided "no information about the extent of his distress"); *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 60-61 (1986) (although the plaintiff demonstrated "that she was upset, that she had difficulty sleeping, and that she was embarrassed," the plaintiff "produced no evidence that she could not function or tend to her everyday affairs" which the Court explained "by itself was fatal to her claim [for IIED]").

Here, Plaintiffs' factual allegations do not support a conclusion of "an emotional response so acute that no reasonable person could expect to endure it" and that Plaintiffs are "unable to function" and "unable to tend to necessary matters." *Interphase Garment Solutions, LLC*, 566 F.Supp.2d at 466 (citations omitted). While Plaintiffs allege having suffered specific physical injuries, *e.g.* "a fracture and dislocation to her spinal cord" and "a concussion and a closed fracture of the glenoid cavity and neck of right scapula" (Compl. at ¶¶ 84, 96), and having endured specific physical symptoms, *e.g.* "paraly[sis] from approximately the breast plate down" (Compl. at ¶ 84), the Complaint makes no similar detailed factual allegations regarding any *emotional diagnosis* or *emotional symptoms*, nor any allegations of seeking or obtaining treatment for any emotional condition.  There is no factual matter showing Plaintiffs are unable to function or unable to tend to necessary matters. Additionally, the Plaintiffs can potentially recover emotional pain and suffering and other non-economic loss with their negligence claim, but the allegations of the Complaint fall short of the requirements to allege a cause of action of IIED under Maryland law. Thus, Count V should be dismissed for the failure to sufficiently plead the first and second elements of IIED, and for the additional independent reason that Plaintiffs have failed to plead severe emotional distress with the required specificity.

## IV.   <u>Conclusion</u>

Plaintiffs advance an untenable theory of liability in Count IV, and have failed to sufficiently plead the claims in Counts V and VI of the Complaint under the applicable pleading standards as a matter of law. Accordingly, dismissal of Counts IV through VI of Plaintiffs' Complaint is warranted.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

19

Respectfully submitted,

*/s/ Stephen S. McCloskey*
Stephen S. McCloskey (Fed. Bar No.: 4640)
Richard J. Medoff (Fed. Bar No.: 19608)
Semmes, Bowen & Semmes
25 South Charles Street, 14th Floor
Baltimore, Maryland 21201
(410) 539-5040 (Telephone)
(410) 539-5223 (Facsimile)
smccloskey@semmes.com
rmedoff@semmes.com
*Counsel for Defendants, Ben Strong*
*Trucking, Inc. and John Oliver Terry, Jr.*

B2088734.DOCX