IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CARLA ORTIZ, Individually, and on
Behalf of her daughter, J.L., a minor

v. : Civil No. CCB-18-3230

BEN STRONG TRUCKING, *et al.*

## MEMORANDUM

On June 18, 2018, a tractor trailer carrying a large load of shingles northbound on Interstate 95 in Harford County, Maryland, careened into the back of a passenger car that had slowed to pilot through stop-and-go construction zone traffic. There were multiple casualties. Carla Ortiz was the driver of the first vehicle struck (two more vehicles would be hit), and she brings this tort action against the truck driver and various companies allegedly affiliated with the shipment on behalf of herself and her minor daughter, who sustained severe and permanently debilitating injuries. There are three pending motions in this case. The first is a partial motion to dismiss by Ben Strong Trucking Inc. ("Strong"), the company that operated the truck at issue and employed its driver, John Oliver Terry, Jr. (ECF No. 4). The second is a motion to dismiss by Cowan Systems, LLC ("CSL"), alleged to be the original carrier contracted to haul the shipment. (ECF No. 12). The final pending motion is brought by Cowan Systems Transportation, LLC ("CST") and Cowan Systems, Inc. ("CSI"), seeking dismissal of the claims against them or in the alternative for summary judgment. The pending motions will be addressed in turn.

1

## DISCUSSION

### I. Standard of Review

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters,* 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly,* 550 U.S. at 570). In considering a Rule 12(b)(6) motion, the court does not always have to limit its review to the pleadings. It can also take judicial notice of public records, including statutes, and can "consider documents incorporated into the complaint by reference, as

well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citations and internal quotation marks omitted).

**II. Analysis**

*i. Ben Strong Trucking's Partial Motion to Dismiss*

Strong asks this court to dismiss, as a matter of law, three of the counts brought against it in the complaint: (1) Count IV, negligent infliction of emotional distress; (2) Count V, intentional infliction of emotional distress; (3) Count VI, punitive damages.

**(1) NIED**

It is well-established that Maryland law does not recognize an independent claim for negligent infliction of emotional distress. *See Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462, 482 (D. Md. 2002). The plaintiff argues that this rule does not apply in situations where the source of the alleged emotional distress also resulted in physical injuries to the plaintiff. (*See* ECF No. 15-1 at pp. 10-12.) Additionally, she offers to "amend/convert" Count IV into a second negligence claim, should the court find the existing NIED not to be cognizable alone.

A clear rule surfaces from the extensive Maryland case law on this precise question. While negligent infliction of emotional distress is not a viable standalone claim under Maryland case law, emotional distress can be recoverable as an element of damages in a personal injury action. *See Alban v. Fiels*, 210 Md. App. 1, 19 (2013). "[W]hen tortious conduct causes a physical injury, the injured person may recover damages for emotional distress attendant to the physical injury." *Exxon Mobil Corp. v. Ford*, 204 Md. App. 1, 101 (2012); *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 63 (1986) ("Recovery may be had in a tort action for

3

emotional distress arising out of negligent conduct. In such case, the emotional distress is an element of damage, not an independent tort.") Accordingly, Count IV will be dismissed. The court notes that the plaintiff has included claims for emotional distress in her negligence count. Compl. ¶¶ 114-15. Nevertheless, she may seek leave to amend the complaint if counsel believes there is some need to replead the damages request.

### (2) IIED

A plaintiff must satisfy four elements to sustain an IIED claim in Maryland: (1) intentional or reckless conduct, that is also (2) extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. *Harris v. Jones*, 281 Md. 560, 566 (1977). The plaintiff argues that the shingles shipment at issue was illegally double-brokered in violation of the Federal Motor Carrier Safety Regulations and that this act supplies the intentional or reckless extreme and outrageous action needed to satisfy the first two prongs of the IIED test. To sustain an IIED cause of action a plaintiff must show that the defendant intended to cause the plaintiff distress, knew that it was substantially certain that distress (of the requisite magnitude) would result from a given course of action, or acted recklessly in deliberate disregard of a strong likelihood that emotional distress would result. *Foor v. Juvenile Servs. Admin.*, 78 Md. App. 151, 175 (1989). In this case, any alleged unlawful agreement to broker the shipment to a new carrier is far too removed from the cause of the alleged emotional distress for this claim to survive. The fact that the defendants may have intended to do something improper unrelated (or insufficiently related) to the accident has little bearing on the plaintiff's IIED claim. There is no factual allegation that any of the defendants intended the accident, that the accident was substantially certain to occur, or that there existed any sufficiently causal nexus between the allegedly unlawful agreement to transfer carriers and

4

the harm to the plaintiff or J.L. *See id.* Nor is this kind of traffic accident, however tragic, the type of outrageous or extreme conduct required in Maryland for an IIED claim to proceed. *See Alban*, 210 Md. App. at 6. Even if all the facts in the complaint are assumed to be true, the plaintiff has failed to establish the first three elements of an IIED cause of action. This claim will be dismissed.

### (3) Punitive Damages

Punitive damages in Maryland require actual malice. *See Scott v. Jenkins*, 345 Md. 21, 29 (1997). Actual malice is the performance of an act "with evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 296 (D. Md. 2005). Actual malice must be pled with specificity. *See Scott*, 345 Md. at 36.

There are no facts pled in this case that, even when construed in every way to favor the plaintiff, amount to a prima facie case of actual malice. To the extent that the plaintiff points to an allegedly fraudulent double-brokerage arrangement, this cannot possibly support the contention that any defendant purposely defrauded (nor even misrepresented any fact) to any plaintiff. *See Maryland Envtl. Tr. v. Gaynor*, 370 Md. 89, 97 (2002). Simply put, the first alleged encounter between any plaintiff and any defendant was the tragic collision on I-95. Any earlier impropriety involving the contract for carrying the shingles load cannot be used to marshal an argument that there was ever malice, or a motive to injure or defraud, a plaintiff. The parties had never met. Nor are there allegations that, if true, amount to "evil or rancorous motive influenced by hate." *Biktasheva*, 366 F. Supp. 2d at 296. Accordingly, Count VI will be dismissed.[1]

---

[1] Separately, Strong also contends that the complaint improperly groups the defendants for purposes of vicarious liability. The parties go back and forth about an alleged enterprise among the defendants, the presumption of corporate separateness, apparent agency, and statutory employment. While some of Strong's arguments may

5

ii. *Cowan Systems, LLC's Motion to Dismiss*

CSL contends that the case against it should be dismissed as a matter of law. (ECF No. 12.) While, as explained above, Counts IV, V, and VI will be dismissed as to all defendants, CSL puts forth additional contentions, asserting that all remaining claims against it should be dismissed. First, it argues that Strong and Terry were independent contractors and that therefore CSL is immune from any liability that would otherwise attach under the doctrine of *respondeat superior*. Second, it says that the Federal Aviation Administration Authorization Act of 1994 ("FAAAA") preempts any negligence claims against it. Finally, as to Count III, it contends that dismissal is warranted because there are insufficient facts pled to show negligent hiring.

The plaintiff has brought three alternative theories for recovery in this case. Count I alleges that CSL was a statutory employer of Ben Strong and Mr. Terry. The parties appear to agree that the viability of a statutory employer theory rests at least in part on whether CSL was acting as a broker (as CSL itself alleges) or as a carrier (as the plaintiff contends). *See Schramm v. Foster*, 341 F. Supp. 2d 536, 548 (D. Md. 2004); *AIG Europe Ltd. v. General System, Inc.*, 2014 WL 3671566, at *4 (D. Md. 2014).[2] Similarly, the threshold viability of Count II appears to rest on CSL's designation as a carrier. (*See* ECF 21-2 at pp. 11-14 and ECF 12-1 at pp. 4-8.) Count III is the plaintiff's theory for recovery if CSL was indeed acting as the broker for this shipment; it requires this court to determine whether broker liability in personal injury cases is preempted by the FAAAA, a question on which there appears to be at least somewhat of a split among courts to have recently considered the issue. *Compare Owens v. Anthony*, 2011 WL

---

ultimately be persuasive, the defendants do not ask for any relief in this section, and it is the kind of factual matter best saved for summary judgment. The court therefore will not opine on it here.

[2] Unpublished cases are cited not for their precedential value but for the persuasiveness of their reasoning.

6056409, at *3 (M.D. Tenn. Dec. 6, 2011), *Mann v. C.H. Robinson Worldwide, Inc.*, 2017 WL 3191516, at *7 (W.D. Va. July 17, 2017), *and Montes de Oca v. El Paso-L.A. Limo. Exp., Inc.*, 2015 WL 1250139, at *2 (C.D. Cal. Mar. 17, 2015), *with Vokova v. C.H. Robinson Co.*, 2018 WL 741441, at *4 (N.D. Ill. Feb. 7, 2018), *Krauss v. IRIS USA, Inc.*, 2018 WL 2063839, at *5 (E.D. Pa. May 3, 2018), and *Miller v. C.H. Robinson Worldwide, Inc.*, 2018 WL 5981840, at *4 (D. Nev. Nov. 14, 2018). But this question of statutory interpretation and congressional intent need only be decided if it is established that CSL acted as a broker and not a carrier. It is therefore not necessary to address at this time.

The facts pled in this case show that, if CSL served as a carrier, Counts I and II are at least facially plausible. *See Iqbal*, 129 S.Ct. at 1949. And for the purposes of this Rule 12(b)(6) motion, factual inferences and ambiguities are resolved in a plaintiff's favor. *Ibarra*, 120 F.3d. at 474. Here, the plaintiff has not only alleged that CSL (or CSI) was a carrier of the shipment at issue, they have provided a bill of lading listing both CSI and Strong as the carrier of the shipment (ECF No. 21-4) and business records obtained from the shipper indicating that it contracted with CSL to be the carrier of the shingles load (ECF No. 21-7).[3] This is just the type of factual dispute that is best saved for summary judgment. CSL's motion to dismiss Count I and Count II will therefore be denied.

Count III will not be necessary to reach should it be determined that CSL was a carrier. As explained above, any consideration of FAAAA is therefore deferred. Separately, the defendants argue that Count III is deficient as a matter of law because, under the assumption that CSL was acting as a broker, there is no allegation that CSL knew or should have known of its selected carrier's accident history or safety record. But the plaintiff does allege as much, *see*

---

[3] As explained below, the defendants assert that only CSL was associated with the shipment and that CSI was a defunct entity by 2018. The bill of lading however, lists CSI.

Compl. ¶ 136. She contends that Strong's statistics regarding out of service vehicles and out of service driver rates were publicly available online and portended greater safety concerns. Compl. ¶ 52. Whether or not CSL, acting as a broker, had sufficient reason to know of Strong's safety record is similarly a factual matter better considered at summary judgment. CSL's motion to dismiss Count III will therefore be denied.

### iii. *Cowan Transportation Systems, LLC's and Cowan Systems, Inc.'s Motion to Dismiss, or in the alternative, for Summary Judgement*

The plaintiff has sued three Cowan entities alleging that they acted as "an enterprise," *see* ECF No. 22-1 at p. 1, and because it is uncertain which of the Cowan entities was involved in the shipment at issue. *See, e.g.*, Compl. ¶ 51. Cowan Systems, LLC filed the motion to dismiss addressed above. Cowan Transportation Systems, LLC and Cowan Systems, Inc. bring this additional motion asserting that neither entity was in business at the time of the accident. The defendants put forth evidence in the form of an affidavit stating that CST filed Articles of Cancellation on July 8, 2010, and that CSI ceased its business activities in May, 2000. (ECF 19-1 pp. 4-5). The plaintiff is not satisfied with the Articles of Cancellation for CST. She seeks the opportunity to depose Mr. Morgan, the President of CSL, who avers in affidavit form that CST and CSI were shuttered at the relevant time. Ms. Ortiz points out that CSI, which the affidavit says was closed in 2000, was listed on the bill of lading for the shingles shipment in 2018, while CSL was listed in GAF Materials (the shingles company) shipment records. She seeks an opportunity to sort out whether any Cowan entity beyond CSL was involved in this shipment. Because CSI is listed on the paperwork concerning the shipment at issue, limited discovery into

exactly which Cowan entities were involved here will be permitted, and the motion to dismiss will be denied as to Counts I, II, and III at this time.

A separate order follows.

6/14/19
Date

CCB
Catherine C. Blake
United States District Judge