IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CARLA ORTIZ,** | * | |
| *Individually, and on behalf of her daughter* | * | |
| *J.L., a minor.* | * | |
| | * | |
| v. | * | Civil Action No. 18-3230 |
| | * | |
| **BEN STRONG TRUCKING, INC.** | * | |
| | ****** | |

## MEMORANDUM

This tort action arises out of a June 18, 2018 traffic accident on Interstate 95 in Harford County, Maryland, in which John Oliver Terry, Jr., the driver of a tractor trailer operated by defendant Ben Strong Trucking, crashed into the back of plaintiff Ortiz's car, resulting in physical injuries to Ortiz and permanently debilitating injuries to J.L, her minor daughter. There are four motions pending in this case. The first is the plaintiff's partial motion for summary judgment against defendants Terry, Ben Strong Trucking, Inc. ("Ben Strong"), Cowan Systems, Inc. ("CSI"), Cowan Systems Transportation, LLC ("CST") and Cowan Systems, LLC ("Cowan Systems"). (ECF 58). The second is a motion for summary judgment brought by defendants CSI and CST. (ECF 79). In the third and fourth motions, defendants CSI, CST, and Cowan Systems ("the Cowan defendants") seek leave to file an amended answer to include cross-claims against co-defendants Ben Strong and Terry. (ECFs 53, 55). The motions have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the following reasons, the court will deny both of the motions for summary judgment in their entirety and grant both of the motions for leave to amend.

1

## BACKGROUND

The plaintiff filed this action on October 17, 2018. The complaint alleges negligence as to all named defendants, including Terry, Ben Strong, and the Cowan defendants, and negligent hiring as to all defendants other than Terry, on the theory that at the time of the accident, defendant Terry was an agent or employee of Ben Strong and a statutory employee of either Cowan Systems, CSI, or CST.[1] At the time of the accident, Terry was transporting a shipment requested by GAF Materials to be delivered to Southborough, Massachusetts. (ECF 1, Compl. ¶¶ 15, 17). The plaintiff alleges GAF Materials had a contract with CSI or another Cowan defendant to act as the motor carrier for the shipment, and that one or multiple of the Cowan defendants assigned Ben Strong to deliver the shipment. (*Id.* ¶¶ 45–50).

Following the plaintiff's complaint, Ben Strong's insurer, Amguard Insurance, filed a complaint of interpleader naming all parties to this action, in addition to several others, as defendants. (Civil Action No. CCB-18-3885, ECF 1). The court consolidated this case with the interpleader action in June 2020. (ECF 61). Also in June 2020, the Cowan defendants' motions for leave to file amended answers and the plaintiff's motion for summary judgment were filed. Thereafter, CSI and CST moved for summary judgment. Discovery in this matter is ongoing. (*See* ECF 106, Scheduling Order).

---

[1] The complaint also named as a defendant Alliance Trucking and Logistics, LLC and Bowman Sales and Equipment, Inc., and brought claims against all defendants for negligent infliction of emotional distress, intentional infliction of emotional distress, and punitive damages. (ECF 1, Compl.). Ben Strong and Terry and the Cowan defendants filed motions to dismiss, which the court denied as to the negligence claims, but granted with respect to the NIED, IIED, and punitive damages claims. (ECF 27). The plaintiff voluntarily dismissed Bowman from this action on August 20, 2020. (ECF 88, Marginal Order approving Stipulation of Dismissal). To date, Alliance has not responded to the plaintiff's complaint.

I. **Motions for Summary Judgment**

a. **Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

b. **The Plaintiff's Motion for Summary Judgment**

The plaintiff argues that because defendant Terry pled guilty to a charge of criminal negligence, his negligence is not in dispute and summary judgment should be granted against him and his employer, Ben Strong, and thus also against the Cowan defendants as their "statutory employers" or apparent principals. (ECF 58-3, Pl.'s Mot. at 9). The court will first

address the propriety of summary judgment as to Terry and Ben Strong's negligence and then turn to whether the Cowan defendants are liable for any negligent acts of Terry and Ben Strong as a matter of law.

### i. Terry and Ben Strong's Negligence

The plaintiff seeks to establish Terry and Ben Strong's negligence solely on the evidence of Terry's guilty plea; she provides no other evidence to support her motion. Terry pled guilty in the Circuit Court for Harford County, Maryland to one count of criminally negligent manslaughter and one count of second-degree assault for his involvement in the June 18, 2018, accident. (ECF 58-9, Pl. Ex. 4, Terry Guilty Plea Tr. 15:23–16:4). Under Maryland law, a guilty plea in a criminal case "does not conclusively establish liability" in a subsequent civil case. *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 403 (1975); *see also Crane v. Dunn*, 382 Md. 83, 93–94 (2004). Terry's guilty plea may be admissible as evidence in this case, *see Chartis Prop. Cas. Co. v. Huguely*, 243 F. Supp. 3d 615, 626–27 (D. Md. 2017); *Surran v. Kuntz*, No. CV L-06-1380, 2008 WL 11363275, at *4 (D. Md. June 3, 2008), but Terry and Ben Strong must be "given an opportunity to explain [Terry's] plea[,]" *Brohawn*, 276 Md. at 404. Ben Strong and Terry argue Terry's plea was motivated by a desire to avoid the risk of even greater criminal liability. Terry was facing six criminal charges, and four of these, including some felony charges, were dropped when he pled guilty. *See State v. Terry*, Case No. C-12-CR-19-000015 (Harford Cnty. Cir. Ct. Jul. 8, 2019), http://casesearch.courts.state.md.us/casesearch. The court views this explanation "in light of the record as a whole" to determine whether it is sufficient to create a genuine issue of material fact. *Surran*, 2008 WL 11363275, at *4.[2] In *Surran*, for example, a

---

[2] Unpublished opinions are cited for the soundness of their reasoning and not for any precedential value.

defendant's attempts in a civil case to claim he was innocent of his conviction for second-degree assault could not overcome the plaintiff's summary judgment motion where the record included undisputed evidence that established the elements of the plaintiff's claims, including physical evidence of her injuries and the defendant's own statements. *Id.* But the record as to negligence in this case consists solely of the transcript of Terry's guilty plea, in which he admits only that the State of Maryland had sufficient evidence to prove his guilt as to the charge of criminally negligent manslaughter.[3] While his admission is probative evidence of his negligence in this case, he disputes its significance, and the plaintiff has not offered any other evidence regarding the accident that shows Terry's guilty plea is beyond such dispute. Based on the present record, the credibility of Ben Strong and Terry's explanation of the circumstances that led Terry to accept the State's plea offer must be evaluated by the trier of fact. Accordingly, the court will deny the plaintiff's motion for summary judgment as to Ben Strong and Terry's negligence.

### ii. Liability of the Cowan Defendants for Negligent Acts of Terry and Ben Strong

The plaintiff also seeks summary judgment on the issue of whether the Cowan defendants are liable for any negligent acts committed by Terry or Ben Strong. The plaintiff asserts two theories to establish liability. First, the plaintiff argues that under the Federal Motor Carrier Safety Regulations ("FMCSRs") and the Moving Ahead for Progress in the Twenty-First Century Act ("MAP-21 Act"), P.L. 112-141, 126 Stat. 405 (July 6, 2012), the Cowan defendants were statutory employers of Ben Strong and Terry with respect to the shipment involved in the accident, and, thus, they can be held liable for Ben Strong and Terry's negligent acts. Second, the plaintiff contends that even assuming no statutory employer-employee relationship exists, she

---

[3] It does not appear that Terry was asked to or did agree with any specific statement of facts in support of the guilty pleas. (*See* ECF 58-9).

has established that Ben Strong and Terry were the apparent agents of the Cowan defendants with respect to the shipment.

### 1. Statutory Employer

The regulatory definition of an employee under the FMCSRs includes independent contractors hired by motor carriers to transport freight. *See* 49 C.F.R. § 390.5 (defining "employee" as "an individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety," including "an independent contractor while in the course of operating a commercial motor vehicle"); *Schramm v. Foster*, 341 F. Supp. 2d 536, 548 (D. Md. 2004). The plaintiff's theory of liability thus rests on showing that the Cowan defendants were the "motor carrier" for the shipment at issue. The Cowan defendants argue that they acted not as a "motor carrier" but as a "broker" for the shipment, by arranging for Ben Strong to transport the shipment for its frequent client, GAF. The plaintiff presents two arguments why the Cowan defendants were a motor carrier and not a broker for the shipment.

First, the plaintiff points to Federal Motor Carrier Safety Administration ("FMCSA") records showing that Cowan Systems, LLC is "not authorized" to act as a broker. (ECF 58-12, Pl. Ex.7, SAFER Company Snapshots, at 1). Cowan Systems is required to register and be authorized as a broker in order to sell or offer to sell services that arrange for transportation by motor carrier. *See* 49 U.S.C. §§ 13102(2) (defining "broker"), 13901(a) (registration requirements). The plaintiff's evidence conflicts with other FMCSA records and documents related to the shipment. Companies are identified in the FMCSA's Safety and Fitness Electronic Records ("SAFER") System by a USDOT Number and an "MC" Number. (ECF 58-14, Pl. Ex. 9, SAFER Data Field Names, at 1). Cowan Systems, LLC appears to have two USDOT and MC Numbers. The company is registered with the FMCSA with a USDOT Number 2217118 and MC

Number 285256, (ECF 58-12 at 1; ECF 58-11, Pl. Ex. 6, FMCSA Records, at 16), and also with a USDOT Number 548880 and MC Number 271882, (ECF 58-12 at 3; ECF 58-11 at 1). While Cowan System's brokerage authority is listed as "not authorized" and/or "inactive" in records for USDOT No. 2217118/MC No. 285256, (ECF 58-12 at 1; ECF 58-11 at 16), its brokerage authority is listed as "authorized for property" and "active" for USDOT No. 548880/MC No. 271882, (ECF 58-12 at 3; ECF 58-11 at 1). While the plaintiff argues USDOT No. 548880 is Cowan Systems's "Motor Carrier number, not a broker's number," (ECF 101-2, Reply at 2), it provides no evidence to support this contention, and other evidence in the record tends to rebut it. For instance, GAF produced a license for Cowan Systems, dated May 30, 2000, authorizing it to "engage in operations . . . **as a broker**, arranging for transport of freight . . . by motor vehicle." (ECF 58-6, Pl. Ex. 1, GAF Materials, at 23) (emphasis added). That license bears the MC No. 271882, which corresponds to the MC Number and USDOT Number associated with the active brokerage license for Cowan Systems in the FMCSA records. (ECF 58-6 at 23; ECF 58-11 at 1). Accordingly, the status of Cowan Systems's brokerage license is a genuine issue of material fact.

Second, the plaintiff argues that regardless whether Cowan Systems was authorized as a broker, federal law prohibits the Cowan defendants from representing themselves to GAF as both a motor carrier and a broker in order to procure a particular shipment. Under 49 U.S.C. § 13901(c), persons required to register with the FMCSA must, when they agree "to provide transportation or service for which registration is required," "specify, in writing, the authority under which the person is providing such transportation or service." In its answers to the plaintiff's interrogatories, Cowan Systems described its arrangement with GAF as follows. GAF would request assistance with its transportation requirements and request pricing and capacity for

7

shipments. Cowan Systems, LLC, acting through the employees of its property broker division, Cowan Logistics, would then advise whether the requested shipments could be transported by Cowan Systems or could be handled by Cowan Logistics acting as a broker to arrange transportation by a licensed motor carrier. (ECF 58-7, Pl. Ex. 3, Cowan Systems's answers to the plaintiff's interrogatories, at 29–30). The plaintiff argues that the Cowan defendants did not consistently disclose to GAF during this process when they were accepting a shipment as a motor carrier and when they were acting as a broker. In the absence of that transparency, the plaintiff contends the Cowan defendants must be treated as a motor carrier. It is not clear to the court why a registrant's failure to indicate the source of its authority would relegate it to the status of a motor carrier, but, at any rate, the plaintiff has not shown the absence of a genuine issue of material fact as to whether the Cowan defendants sufficiently specified the authority under which they were acting with respect to the shipment at issue. A June 8, 2018, email from Frank Longo, of GAF, to Christopher Bowen, of Cowan Systems's sales division,[4] sends information regarding five shipments for June 15, 2018, including the shipment at issue. (ECF 80-7, Def. Ex. 4). And while the bill of lading for the shipment lists "Cowan Systems, Inc." as the carrier, the signature line for the carrier is signed by a "Ben Wherry" of Ben Strong Trucking. (ECF 58-6 at 11). The document is also signed by a GAF employee, supporting the Cowan defendants' contention that GAF was well aware that Cowan Systems brokered the shipment to Ben Strong. (*Id.*).

---

[4] The plaintiff also contends the Cowan defendants were unlawfully performing brokerage services through the sales division of Cowan Systems, Cowan Logistics, because Cowan Logistics is not a registered broker. (ECF 101-2, Reply at 6). But no evidence indicates Cowan Logistics was ever held out to GAF or Ben Strong as a broker. For example, the broker-carrier agreement between Ben Strong and Cowan Systems identifies Cowan Logistics as a division of Cowan Systems, and then defines Cowan Systems as the "broker" in the agreement. (ECF 80-6, Def. Ex. 3, at 11).

The plaintiff cites other record evidence to support the theory that the Cowan defendants held themselves out as the motor carrier for the shipment, but that evidence is also disputed. For example, the plaintiff cites an affidavit by Christopher Leonard, Senior Director of Supply Chain Operations for GAF, in which Leonard states that the shipment was accepted by Cowan under a schedule of rates used only for shipments for which Cowan was acting as a motor carrier, rather than under the schedule of rates used for Cowan's brokerage services. (ECF 58-6 at 2). But Leonard's understanding is contradicted by the affidavit of Christopher Bowen, Sales Director for Cowan Systems, which states that the rates quoted to GAF were always based on pickup and delivery points and did not differ based on whether the load was tendered to Cowan Systems as a motor carrier or arranged by the company as a broker. (ECF 80-2, Def. Ex. 1, at 3).

In sum, factual disputes regarding the validity of the Cowan defendants' brokerage license and the extent to which they identified themselves as the broker for the shipment preclude summary judgment as to whether the Cowan defendants were statutory employers of Ben Strong and Terry.

### 2. Apparent Agency

The plaintiff argues that even if the Cowan defendants were not statutory employers of Ben Strong and Terry, the Cowan defendants are vicariously liable for Ben Strong and Terry's negligence because they represented to GAF that Ben Strong and Terry were agents of a Cowan entity. "Apparent agency is an equitable doctrine, whereby a principal is held responsible for the acts of another because the principal, by its words or conduct, has represented that an agency relationship existed between the apparent principal and its apparent agent." *Bradford v. Jai Med. Sys. Managed Care Organizations, Inc.*, 439 Md. 2, 16 (2014). To establish apparent agency, the plaintiff must show that (1) Cowan defendants created the appearance that an agency relationship existed between them and Ben Strong and Terry; (2) GAF believed the agency relationship

9

existed and relied on that belief in accepting the services of Ben Strong and Terry; and (3) GAF's belief and reliance were objectively reasonable. *See id.* at 18–19. The plaintiff's sole evidence of an apparent agency relationship at this stage is the Affidavit of Christopher Leonard. (ECF 58-6 at 2). As previously explained, Leonard's affidavit is not conclusive evidence that GAF understood any Cowan entity to be the motor carrier for the shipment or that GAF believed Ben Strong or Terry to be operating under the control of any Cowan entity. Other evidence in the record indicates that GAF may have believed Cowan Systems or CSI to be acting merely as a broker with no control over the equipment or driver involved in the shipment. This evidence includes the bill of lading signed by GAF and Ben Strong; the brokerage license for Cowan Systems which was in the possession of GAF; and email correspondence between Cowan Systems and GAF showing that GAF used Cowan Systems only as a broker, and not as a motor carrier, for some shipments. (ECF 58-6 at 11, 23; ECF 58-10, Pl Ex. 5, Emails produced by Cowan Systems). Because GAF's understanding of the Cowan defendants' involvement remains in dispute, the plaintiff cannot establish apparent agency as a matter of law.

***

In sum, because significant factual disputes remain as to the Cowan defendants' roles or involvement in the shipment, the plaintiff cannot prevail at this stage on either of her theories of vicarious liability. Accordingly, the plaintiff's motion for summary judgment as to the Cowan defendants' liability will be denied.

### c. CSI & CST's Motion for Summary Judgment

CSI and CST have renewed the same arguments made in their earlier motion to dismiss or in the alternative for summary judgment. (ECF 19). They argue judgment is warranted in their favor because neither entity was in business at the time of the accident. At the motion to dismiss

stage, the court noted that while CSI and CST put forth evidence in the form of an affidavit stating that CST filed Articles of Cancellation in 2010 and CSI ceased its business activities in 2000, CSI is listed on the bill of lading as the motor carrier for the shipment and the plaintiff was not satisfied with the Articles of Cancellation for CST. (ECF 26, Memorandum at 8). The court denied the motion in favor of allowing the plaintiff to take limited discovery into which of the Cowan defendants were involved. (*Id.* at 8–9). CSI and CST submit the same evidence in support of the instant motion, and the plaintiff repeats her argument that the motion is premature, as she has not yet had the opportunity to depose CSI or CST's corporate representative. CSI and CST argue that the plaintiff has waived her opportunity to depose their corporate representatives by filing her motion for summary judgment, which seeks relief against CSI and CST without the benefit of knowing the extent of their involvement in the accident.

      The court finds that CSI and CST's motion is still premature. Emails between counsel for the plaintiff and counsel for CSI and CST show that counsel for the plaintiff attempted throughout the fall and winter of 2019 and in June 2020 to schedule Rule 30(b)(6) depositions for CSI and CST's representatives. (*See* ECF 102-1 at 1–3; ECF 107-1 at 3). While the plaintiff filed her motion for summary judgment in July 2020, the record shows the parties continued to negotiate scheduling the relevant 30(b)(6) depositions. The parties' most recent consent motion to modify the court's scheduling order states that the depositions were eventually scheduled, for December 22, 2020, and were the first to have been scheduled in this case. (ECF 115 at 1–2). CSI and CST have not opposed the taking of those depositions. Because the court continues to believe the issue of which of the Cowan defendants existed and/or had a role in the accident is better evaluated with the benefit of the discovery now underway, the court will deny CSI and CST's motion.

## II. The Cowan Defendants' Motions for Leave to File Amended Answers

Finally, the Cowan defendants seek leave to amend their answers to add crossclaims against Ben Strong and Terry. Cowan Systems seeks to add claims against Ben Strong and Terry for contractual indemnity, common law indemnity, and contribution, (ECF 53), while CSI and CST seek to add claims for common law indemnity and contribution only, (ECF 55). Ben Strong and Terry argue that the proposed amendments were filed long after the November 1, 2019, deadline for amendments to pleadings in the court's October 22, 2019, Scheduling Order, (ECF 35), and Cowan Systems presents no good cause to extend that deadline.

When a party moves to amend after the deadline established in the scheduling order for doing so, the party must show good cause to modify the scheduling order under Rule 16(b)(4). *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 519–20 (D. Md. 2014). If the moving party satisfies that standard, the court then evaluates the motion for leave to amend under Rule 15(a). *Id.* Leave to amend should be freely granted under Rule 15(a), and amendments are generally accepted absent futility, undue prejudice, or bad faith. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Matrix Capital Mgmt. Fund, LP v. BearingPoint*, *Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (explaining that leave to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile"). An amendment is futile when the proposed amended pleading would not satisfy the requirements of the federal rules. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

There is good cause to extend the deadline for the Cowan defendants to amend their pleadings, for three reasons. First, while no party sought a modification to the scheduling order before the Cowan defendants filed their motions for leave to amend, several modifications have

been sought and granted since. The most recent modification to the scheduling order extended the deadline to move for joinder of additional parties and amendments of pleadings to October 1, 2020, well after the Cowan defendants filed their motions to amend. (ECF 106). Second, correspondence between counsel for the Cowan defendants, counsel for Ben Strong and Terry, and Amguard Insurance Company shows that the Cowan defendants attempted to seek Amguard, Ben Strong, and Terry's agreement to indemnify the Cowan defendants should judgment be entered against them. (ECF 59-1–59-6, Exs. A–F). Those efforts continued through March 2020 and well explain any delay. Third, "the rights both to indemnification and to contribution, whether based on contract or tort, accrue at the time of payment and not before." *Heritage Harbour, L.L.C. v. John J. Reynolds, Inc.*, 143 Md. App. 698, 712–13 (Md. Ct. Spec. App. 2002) (quoting *S. Md. Oil Co. v. Tex. Co.*, 203 F. Supp. 449, 452–53 (D. Md. 1962)). It would not serve the interests of justice to bar the Cowan defendants from pleading claims which have not yet accrued solely on the basis of deadlines in a now-superseded scheduling order. The Cowan defendants have shown good cause to file amended answers past the November 2019 deadline, Ben Strong and Terry identify no prejudice that will result from amendment, and the court identifies no such prejudice either. Accordingly, the court will grant the motions to amend.

## CONCLUSION

For the foregoing reasons, the court will deny the plaintiff's motion for summary judgment, deny CSI and CST's motion for summary judgment, and grant Cowan Systems's and CSI and CST's motions to amend. A separate Order follows.

 3/11/2021                                                                      /S/                         
Date                                                                     Catherine C. Blake
                                                                         U.S. District Court Judge